# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42625-2014

BARBARA MORRISON, for herself, and as personal representative and as Guardian Ad Litem for her minor children, GRANT MORRISON and KATIE MORRISON,

    Plaintiffs-Appellants,

v.

ST. LUKE'S REGIONAL MEDICAL CENTER, LTD.; JOACHIM G. FRANKLIN, M.D.; and EMERGENCY MEDICINE OF IDAHO, P.A.,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2016 Term

2016 Opinion No. 79

Filed: July 22, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County. Hon. Richard D. Greenwood, District Judge.

The judgment of the district court is <u>affirmed</u>.

Donald W. Lojek, Lojek Law Offices, Boise, argued for appellants.

Randall L. Schmitz, Gjording Fouser PLLC, Boise argued for respondent St. Luke's Regional Medical Center, Ltd.

Nicole L. Cannon, Powers Tolman Farley PLLC, Twin Falls, argued for respondents Joachim Franklin, M.D., and Emergency Medicine of Idaho, P.A.

_____

EISMANN, Justice.

This is an appeal out of Ada County from a judgment in favor of the defense in a medical malpractice case following a jury trial. We affirm the judgment.

## I.
## Factual Background.

On December 26, 2011, Mitchell Morrison arrived at the emergency department of St. Luke's Regional Medical Center, Ltd. ("St. Luke's"), in Meridian, complaining of chest pains. He was seen by Joachim G. Franklin, M.D. ("Dr. Franklin"), who took a history, conducted a thorough physical examination, and ordered the appropriate tests. Based upon the results, he correctly determined that Mr. Morrison was not having a heart attack and was safe and stable for discharge from the emergency department. However, Dr. Franklin recommended that Mr. Morrison contact a cardiologist the next morning to schedule an appointment and provided him with the cardiologist's name and contact information. Dr. Franklin also recommended that Mr. Morrison contact his primary care physician, and the emergency department faxed its documentation to that physician the following day. That physician's medical assistant called Mr. Morrison's telephone number and left a message to schedule an appointment, but he did not do so.

On December 27, 2011, Barbara Morrison, Mr. Morrison's wife, called for an appointment with the cardiologist, and the telephone was answered by a scheduler for St. Luke's. The scheduler stated that the first available appointment for the cardiologist was in four weeks. Mrs. Morrison requested an earlier appointment, and she was given an appointment in three weeks with another St. Luke's cardiologist. On January 11, 2012, Mr. Morrison died from a heart attack.

On June 10, 2013, Mrs. Morrison, on her behalf and on behalf of her minor children, filed a wrongful death action against St. Luke's and Dr. Franklin. On December 23, 2013, Mrs. Morrison filed a separate wrongful death action against Emergency Medicine of Idaho, P.A. ("Emergency Medicine"), Dr. Franklin's employer. On February 5, 2014, the district court entered an order consolidating the second lawsuit with the first.

Mrs. Morrison contended that St. Luke's and Emergency Medicine were liable based upon their own negligence and the imputed negligence of Dr. Franklin. St. Luke's and Emergency Medicine both filed motions for partial summary judgment seeking dismissal of the claims that they were negligent, and the district court granted those motions. The case was tried to a jury, which found that Dr. Franklin had not failed to meet the applicable standard of health care practice. Mrs. Morrison then timely appealed.

## II.
### Did the District Court Err in Granting Emergency Medicine's Motion for Partial Summary Judgment?

One of the issues to be tried was whether Dr. Franklin had violated the local standard of care by failing to properly indicate on an emergency-room record that he wanted Mr. Morrison to be seen promptly by a cardiologist. The schedulers were trained to look at a place on the record under the heading "Disposition" to see whether the referring physician specified a time frame within which the patient was to be seen by a cardiologist. The cardiologists set aside two 30-minute slots per day for urgent appointments. If there was a time frame specified, the schedulers would look for a time slot for urgent appointments that was within the specified time frame. If there was no time frame specified, the schedulers would schedule the appointment at the next available opening for non-urgent appointments.

Dr. Franklin did not specify in the emergency-room record a time frame within which he wanted Mr. Morrison to be seen by the cardiologist. He wrote that Mr. Morrison should contact the cardiologist the following day. Dr. Franklin testified that in his experience, a referral from an emergency-room physician received an expedited appointment. Because Dr. Franklin did not specify a time frame, the scheduler did not give Mrs. Morrison an expedited appointment for her husband. Mrs. Morrison contended that Emergency Medicine was negligent for failing to ensure that Dr. Franklin knew of the proper way to specify in the emergency-room record that he wanted Mr. Morrison to be seen promptly. Her assertion was that had Dr. Franklin made the proper notation on the record, the scheduler to whom Mrs. Morrison talked would have given Mr. Morrison an expedited appointment with the cardiologist in time for the cardiologist to have diagnosed Mr. Morrison's condition and taken steps to prevent the heart attack.

On October 3, 2013, the parties filed a Stipulation for Scheduling and Planning, which set forth deadlines for various actions in the litigation. With respect to Mrs. Morrison's expert witnesses, one of the deadlines was that 200 days before trial she was to "disclose all information required by Rule 26(b)(4)," which would have included "[a] complete statement of all opinions to be expressed and the basis and reasons therefore; [and] the data or other information considered by the witness in forming the opinions," I.R.C.P. 26(b)(4)(A)(i) (2013). On February 4, 2014, Mrs. Morrison provided her disclosure, which included a statement that an out-of-state expert would testify that it was the duty of Emergency Medicine "to ensure that the process [used

3

by St. Luke's for referring patients to cardiologists] was being followed by its physician employees rather than to allow mere assumptions to control the expected continuum of care." However, the disclosure did not state that the expert's opinion was based upon the applicable standard of care as defined in Idaho Code sections 6-1012 and 6-1013 or how the expert became familiar with that standard of care.[1]

On May 14, 2014, months after Mrs. Morrison's deadline for disclosing the information about her experts, Emergency Medicine filed a motion for partial summary judgment seeking to dismiss the claim that it was negligent on three grounds: (1) there was no showing that Emergency Medicine owed Mr. Morrison any direct duty; (2) there was no evidence that Emergency Medicine breached the applicable standard of health care practice; and (3) there was no evidence that any alleged negligence of Emergency Medicine caused Mr. Morrison's death. With respect to the alleged breach of the applicable standard of health care, Emergency Medicine argued that Mrs. Morrison could not present any admissible testimony that Emergency Medicine breached any standard of health care applicable to it as an entity.

In response to the motion for partial summary judgment, Mrs. Morrison presented the deposition testimony of her out-of-state expert. In his deposition, he was asked, "It's my understanding it's your opinion that Dr. Franklin and EMI [Emergency Medicine] should have ensured there was a referral process in place that was understood by everyone in their group; correct?" The expert responded, "Correct."

The expert also testified that he had consulted with a Dr. Kim, a local emergency-room physician, about the applicable standard of care for emergency-room physicians. The expert testified that Dr. Kim told him that the standard of care for emergency-room physicians was the national standard and that the local standard of care did not deviate from the national standard.

---

[1] Idaho Code section 6-1012 provides that in a medical malpractice case the plaintiff must prove

> that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of . . . such health care provider and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to and in which capacity he, she or it was functioning.

Idaho Code section 6-1013 requires that before the plaintiff's expert can testify as to the applicable standard of health care, the plaintiff must lay a foundation for the testimony that includes testimony "that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed."

The expert stated that he did not discuss the specifics of the case with Dr. Kim, but only discussed generalities about the care provided by Dr. Franklin. The expert's deposition testimony indicated that he had not talked with Dr. Kim about the standard of care of entities such as Emergency Medicine. The following exchange then occurred:

> Q. Did you talk with Dr. Kim about referrals to specialists during this conversation?
> A. I didn't get into the specifics of this case.
> Q. Did you get into any specifics such as the medical records or a physician's duty as far as what information should be included in the medical records, for example?
> A. I did not get into that kind of detail at all.
> Q. So other than the completion of a chest pain workup, do you recall if you had any other specific discussions with Dr. Kim relative to this case?
> A. No.

Thus, the expert had not testified to any facts showing that he had knowledge of an applicable standard of care for entities such as Emergency Medicine with respect to training their employee physicians. Emergency Medicine filed a motion to strike the expert's opinion regarding Emergency Medicine's alleged negligence because there was no showing of the foundation required by Idaho Code section 6-1013.

During the oral argument, the district court took up the motion to strike before hearing argument on the motion for partial summary judgment. Mrs. Morrison's counsel admitted that there was nothing in the expert's deposition regarding his knowledge of the applicable standard of care with respect to Emergency Medicine. The following dialogue occurred between the court and Mrs. Morrison's counsel, Mr. Lojek:

> MR. LOJEK: And he [the out-of-state expert] addresses EMI [Emergency Medicine] and he says that both EMI and Dr. Franklin were negligent.
> THE COURT: Oh, I understand. He does that.
> MR. LOJEK: Right.
> THE COURT: He expresses that opinion.
> MR. LOJEK: Right.
> THE COURT: That's isn't the issue here. The issue here is that EMI says he's not demonstrated any foundation necessary to express the opinion with respect to EMI, not necessarily the physician's conduct, but he—that he's not demonstrated sufficient foundation to testify as to EMI. So where's the foundation?
> MR. LOJEK: Well, one of the problems is that when counsel got to ask him questions in his deposition about the group, and about the negligence of the group, and about his disclosures where he says that EMI is negligent, she backed

off on that. She, meaning Ms. Cannon, backed off on that. Didn't ask the right questions. *So there's nothing in the deposition*. But I can't control that. Ms. Fouser didn't ask any questions at all.

(Emphasis added.)

The court then asked whether the required expert disclosure showed that there was a foundation for admitting the expert's opinion, and Mr. Lojek responded that he was still in the process of taking depositions. The dialogue was as follows:

> THE COURT: Do the disclosures show a foundation for his testimony with respect to EMI?
> MR. LOJEK: You do the best you can, Your Honor. But we are still in the process—no, we're still in the—
> THE COURT: Well, did you answer my question?
> MR. LOJEK: No. Yes. Yes, I have, because we're still in the process of taking depositions. I've been fighting, and fighting, and fighting trying to get deposition dates where one counsel or the other counsel has always told me that they're not available. They've been very, very busy. We are still taking depositions of their experts and haven't had an opportunity to do that. We're taking Dr. Brait's deposition.

The court reminded Mr. Lojek that the Plaintiff had the burden of showing that the expert's opinion was admissible, and Mr. Lojek responded that the expert had talked to Dr. Kim. The dialogue was as follows:

> THE COURT: She's just—and Ms. Cannon is suggesting on behalf of EMI that there's no foundation in this record for your client to testify with regard to the standard of care for an emergency room group as opposed to the individual physicians to the end. I'm just asking you, is it—in his disclosures, is that in there?
> MR. LOJEK: Well, as we said in the disclosures, he has talked with Dr. Kim who's a practicing emergency room physician for Saint Alphonsus Group here in Boise. We know that he's done that.

The court asked a fourth time where was the testimony showing the standard of care for an entity like Emergency Medicine. Mr. Lojek responded that the out-of-state expert had "not had an opportunity to respond to the motion itself."

The court gave Mr. Lojek seven days within which to submit an affidavit from the expert showing that an adequate foundation exists for his opinion regarding the alleged negligence of Emergency Medicine. The court admonished counsel that it was not an opportunity to create

new foundation, but only to provide an affidavit showing that the expert had adequate foundation for the opinion he had expressed.

On June 17, 2014, Mrs. Morrison filed the affidavit of the out-of-state expert. In that affidavit, he stated, "To confirm my opinion with respect to EMI's negligence, I have additionally spoken with Darin Lee, M.D. who is a board-certified emergency physician and also practiced in Boise, Idaho in 2011 as a physician member of the group of emergency physicians . . . ."

On June 30, 2014, the district court entered an order granting Emergency Medicine's motion for partial summary judgment. In the order, the court struck the portion of the expert's opinion relating to his conversation with Dr. Lee because: (1) Mrs. Morrison had not supplemented her expert disclosures to indicate that Dr. Lee was a foundational source of the out-of-state expert's opinion even though that information had been requested in an interrogatory; (2) the court had asked Mrs. Morrison's counsel during a telephonic pre-trial conference when the expert's conversation with Dr. Lee had occurred, and "counsel conceded it occurred after the hearing on the motion for summary judgment"; and (3) the court had not given Mrs. Morrison an opportunity to supplement the expert's opinion "with a post hearing conversation with a previously undisclosed person" when it had granted the extension of time. With the striking of that portion of the expert's affidavit, there was no foundation for the admission of his opinion regarding the negligence of Emergency Medicine. Therefore, the court granted its motion for partial summary judgment.

The district court's decision to strike the portion of the out-of-state expert's affidavit that referred to his conversation with Dr. Lee was committed to its sound discretion. *Schmechel v. Dillé*, 148 Idaho 176, 180, 219 P.3d 1192, 1196 (2009). Mrs. Morrison does not contend on appeal that the court abused its discretion in doing so. She only seeks a new trial based upon the court's decision to grant Emergency Medicine's motion for partial summary judgment. There are three reasons why she is not entitled to a new trial on her negligence claim against Emergency Medicine.

First, there was no foundation for the out-of-state expert's opinion regarding the alleged negligence of Emergency Medicine. "The admissibility of the expert testimony is an issue that is separate and distinct from whether that testimony is sufficient to raise genuine issues of material fact sufficient to preclude summary judgment." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137

7

Idaho 160, 163, 45 P.3d 816, 819 (2002). "To avoid summary judgment for the defense in a medical malpractice case, the plaintiff must offer expert testimony indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Id*. at 164, 45 P.3d at 820. "An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time." *Id*. "The applicable community standard of care is defined in Idaho Code § 6-1012 to be the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any." *Id*. at 166, 45 P.3d at 822.

Mrs. Morrison's out-of-state expert testified that there was a national standard of care for entities such as Emergency Medicine. She contends that this was sufficient, relying on the following quotation from *Suhadolnik v. Pressman*, 151 Idaho 110, 254 P.3d 11 (2011):

> Furthermore, where an expert demonstrates that a local standard of care has been replaced by a statewide or national standard of care, and further demonstrates that he or she is familiar with the statewide or national standard, the foundational requirements of I.C. § 6-1013 have been met.

*Id*. at 116, 254 P.3d at 17 (footnotes omitted).

In *Suhadolnik*, we did not hold that an out-of-area expert's assertion that the local standard of care has been replaced by a national standard is sufficient to lay the foundation for the admission of the expert's opinion. The district court in *Suhadolnik* had held that an out-of-state expert's affidavit was inadmissible because he had failed to demonstrate actual knowledge of the local standard of care. *Id*. at 114, 254 P.3d at 15. We began our discussion of that issue by stating, "A precondition to the admission of testimony by a medical expert in a malpractice case is that the expert familiarize himself with the local standard of practice or care for the medical practice field at issue in the case." *Id*. at 114–15, 254 P.3d at 15–16. Immediately following the portion of the *Suhadolnik* opinion quoted by Mrs. Morrison, we stated, "Specifically, an out-of-area expert can demonstrate familiarity with a local standard by speaking to a local specialist and by reviewing deposition testimony that establishes that the local standard is governed by a national standard." *Id*. at 117, 254 P.3d at 18.

8

The expert in *Suhadolnik* had stated in his affidavit that in his opinion the applicable standards of care "do not vary by locale and thus could be considered the same as national standards." *Id*. at 118, 254 P.3d at 19. We held that was insufficient. We noted that the expert was board-certified with "a multitude of experience" in the applicable area of medicine and that he was presumed to be knowledgeable regarding the class of specialists of which the defendant doctor was a member. *Id*. Even so, we stated, "However, he must also demonstrate knowledge of the local standard of care in order for his testimony to be admissible." *Id*. Because there was no showing that the expert was familiar with the local standard of care, we held that the expert's "statement that the standard of care is equivalent to a national standard is without foundation and inadmissible." *Id*. at 120, 254 P.3d at 21. In the instant case, there was no showing that Mrs. Morrison's out-of-state expert was familiar with the local standard of care for entities such as Emergency Medicine.

In her opening brief, Mrs. Morrison lists twenty documents that were filed in the district court in support of her opposition to the motion for summary judgment. She contends that somewhere within those twenty documents there was sufficient evidence to create a genuine issue of material fact precluding summary judgment. She argues, "Absent any evidentiary question regarding the admissibility of the Morrisons' expert's Affidavit, this constellation of exhibits -- deposition testimony -- expert witness disclosures -- affidavits created a body by itself sufficient to defeat EMI's Motion for Partial Summary Judgment." "[T]he trial court is not required to search the record looking for evidence that may create a genuine issue of material fact; the party opposing the summary judgment is required to bring that evidence to the court's attention." *Esser Elec. v. Lost River Ballistics Techs., Inc*., 145 Idaho 912, 919, 188 P.3d 854, 861 (2008). As shown by the dialogue between Mr. Lojek and the district court quoted above, Mr. Lojek did not call the court's attention to anything in those documents that would show the local standard of care for Emergency Medicine.

Mrs. Morrison also argues that because it was agreed that the physicians employed by Emergency Medicine were held to a national standard of care in providing medical services to patients in the emergency room, Emergency Medicine must also be held to a national standard of care with respect to its obligation to ensure that its physicians were knowledgeable of the hospital's referral process. An entity and its employee physicians do not have the same standard of care because "individual providers of health care shall be judged in such cases in comparison

9

with similarly trained and qualified providers of the same class in the same community, taking into account his or her training, experience, and fields of medical specialization, if any." I.C. § 6-1012. An entity does not have the similar training, experience, and fields of medical specialization as its employee physicians, and an entity does not provide direct care to patients.

Second, Mrs. Morrison has not presented argument and authority that the alleged error in granting Emergency Medicine's motion for partial summary judgment affected her substantial rights. "A party alleging error on appeal must also show that the alleged errors were prejudicial." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 122, 334 P.3d 780, 796 (2014). "[A]lleged errors not affecting substantial rights will be disregarded." *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 310, 233 P.3d 1221, 1232 (2010). Mrs. Morrison contends that Emergency Medicine was negligent for failing to ensure that Dr. Franklin was familiar with St. Luke's process for referring patients to a cardiologist in order for the patient to be given a prompt appointment. In order to establish that a defendant was negligent, the plaintiff must prove: "(1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage." *Stem v. Prouty*, 152 Idaho 590, 593, 272 P.3d 562, 565 (2012). "The existence of a duty is a question of law for this Court." *Harrigfeld v. Hancock*, 140 Idaho 134, 138, 90 P.3d 804, 888 (2004).

Emergency Medicine was a professional service corporation organized under chapter 13 of Title 30, Idaho Code (repealed Ch. 251, § 2, 2015 Idaho Sess. Laws 1047, 1047). A professional service corporation had to be organized "for the sole and specific purpose of rendering professional service" and all of the corporation's shareholders had to be "natural persons who themselves are duly licensed or otherwise legally authorized within the state of Idaho to render one or more of the same professional services as the corporation." I.C. § 30-1303 (2013). The corporation cannot "render professional services except through its officers, employees and agents who are duly licensed or otherwise legally authorized to render such professional services within this state." I.C. § 30-1305. Dr. Franklin was a shareholder and employee of Emergency Medicine.

We have not previously addressed whether a professional services corporation such as Emergency Medicine has a duty to train the professionals who are the shareholders and employees of the corporation. "In deciding whether to recognize a new duty or extend a duty

10

beyond the scope previously imposed, this Court engages in a balance of the harms test." *Vincent v. Safeco Ins. Co. of Am.*, 136 Idaho 107, 109, 29 P.3d 943, 945 (2001). The factors considered are set forth in *Rife v. Long*, 127 Idaho 841, 846, 908 P.2d 143, 148 (1996). In her opening brief, Mrs. Morrison did not present any legal authority supporting her claim that Emergency Medicine had the duty she claims, nor has she addressed the factors set forth in *Rife*. Therefore, she has not shown that the district court's alleged error affected her substantial rights.

Third, the jury verdict established that there is no basis for granting Mrs. Morrison a new trial. Assuming that Emergency Medicine had a duty to train the physicians who were its employees, that duty would have been to provide whatever training was necessary to ensure that they met the applicable standard of health care practice of the community in which they provided care. *See* I.C. § 6-1012. The jury by its special verdict found that Dr. Franklin did not "fail to meet the local standard of health care practice in his treatment of Mitchell Morrison." Therefore, there would be no basis for holding that Emergency Medicine failed to properly train him.

## III.
### Did the District Court Err in Failing to Rule That There Was a Settlement Agreement Resolving Mrs. Morrison's Claims Against Dr. Franklin and Emergency Medicine?

On August 6, 2014, counsel for Mrs. Morrison and counsel for Dr. Franklin and Emergency Medicine executed a stipulation to dismiss with prejudice the action against these defendants on the ground that the action had been fully compromised and settled. On August 8, 2014, at 8:00 a.m., Mrs. Morrison filed a motion to dismiss this action against these defendants pursuant to Rule 41(a)(2) of the Idaho Rules of Civil Procedure. The motion was heard later that morning at 9:30 a.m. During the argument on the motion, counsel for Dr. Franklin and Emergency Medicine stated that she believed there was an agreement to settle the claims against her clients, but the agreement was set forth in an exchange of e-mails and a prior telephone conversation that the agreement must be reduced to writing and her clients must approve the release agreement. She stated that she had received the proposed release at 5:15 p.m. the previous day and that there was a term in the proposed release that was unacceptable to her clients. Mrs. Morrison's counsel contended that the entire settlement agreement was set forth in the e-mail exchange. Based upon there being a dispute as to whether there was a settlement, the court denied the motion to dismiss.

11

Mrs. Morrison apparently contends that the district court erred in failing to grant the motion to dismiss, although she does not expressly so state. After reciting what occurred, she merely states: "This completely frustrated the Morrisons' trail [sic] strategy. It was apparent that St. Luke's had fully relied upon EMI/Franklin to prepare a defense and that St. Luke's was not fully prepared to proceed to trial." The district court was faced with conflicting assertions as to whether the parties had reached an agreement, so it denied the motion to dismiss. "[A] motion to dismiss pursuant to Rule 41(a)(2) is addressed to the sound discretion of the trial court and its ruling will not be overturned on appeal absent an abuse of discretion." *Rohr v. Rohr*, 118 Idaho 689, 693, 800 P.2d 85, 89 (1990). In her opening brief, Mrs. Morrison did not present any argument and authority regarding the issue of whether the district court abused its discretion in denying the motion to dismiss. "We will not consider assignments of error not supported by argument and authority in the opening brief." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

On August 11, 2014 (the day the trial began), at 8:00 a.m., Mrs. Morrison filed a motion for summary judgment to confirm the settlement. At 9:00 a.m., the district court began oral argument on some motions in limine. Mrs. Morrison's counsel brought up the motion for summary judgment, and the court stated that it would not hear oral argument on the motion at that time.

On August 14, 2014 (the third day of trial), at 9:00 a.m., Mrs. Morrison's counsel made a motion for a mistrial because both counsel for St. Luke's and counsel for Dr. Franklin and Emergency Medicine were being permitted to conduct cross-examination of Mrs. Morrison's witnesses. Her counsel also asked that if the motion for a mistrial was denied, counsel for only one defendant should be able to cross-examine the witnesses. After the district court denied the motions, Mrs. Morrison's counsel again brought up the motion for summary judgment. The court stated that it would take up that motion the following day. Mrs. Morrison's counsel did not bring up the matter again, and so the court did not rule on the motion. "This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Ada Cnty. Highway Dist. v. Total Success Invs., LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008). Therefore, we will not address this issue.

Mrs. Morrison later filed a separate lawsuit to enforce the settlement agreement, and that case was settled based upon her acceptance of an offer of judgment made by Dr. Franklin and

Emergency Medicine. Thus, she has already recovered based upon the alleged settlement. She argues that because of the alleged wrongful failure of Dr. Franklin and Emergency Medicine to admit that the terms of the settlement were entirely set forth in the e-mail exchange, she should be granted a new trial against St. Luke's. She does not present any rational argument or legal authority as to why St. Luke's should be required to go through another trial because of the alleged wrongdoing of Dr. Franklin and Emergency Medicine. As Mrs. Morrison's counsel argued when seeking a mistrial, "There is one issue here, and that's whether Dr. Franklin was or was not negligent." The jury found that he was not. There is nothing left to be tried.

## IV.
### Did the District Court Err in Denying Mrs. Morrison's Motion for Limitation of Defense Proceedings?

At 8:00 a.m. on the morning the trial began, Mrs. Morrison filed a Motion for Limitation of Defense Proceedings. In the motion, she stated:

> There is only one possible negligent actor in this case: Dr. Franklin. His negligence can be imputed to *both* St. Luke's under the theory of apparent authority and to Emergency Medicine of Idaho, P.A. on an employer-employee basis. There is therefore no reason to allow two lawyers to present a case which is framed essentially on behalf of one Defendant.
> . . . .
> Therefore, the Court, as the gatekeeper in this trial, to ensure fairness as well as keeping the length of the trial as short as will be reasonable, is requested to grant Plaintiffs' Motion. In the interest of time, no Memorandum will accompany this Motion.

The motion was argued at 9:00 that morning. In support of the motion, Mrs. Morrison's counsel stated: "They have an identity of interest, and it's unfair for them to have two of everything. That's the motion." The district court denied the motion.

The same law firm represented both Dr. Franklin and his employer, Emergency Medicine, and another law firm represented St. Luke's. Mrs. Morrison chose to sue both Dr. Franklin, contending that he was negligent, and St. Luke's, contending that it was liable for Dr. Franklin's negligence under the doctrine of apparent authority. Mrs. Morrison contends that both Dr. Franklin and St. Luke's should not have been permitted to cross-examine the witnesses called by Mrs. Morrison and that Dr. Franklin and St. Luke's should not each have been permitted to call expert witnesses in their respective defenses. She further contends that only one

13

of them should have been allowed to conduct cross-examination of a witness and only one should have been permitted to present expert testimony on a particular issue. In essence, she argues that they should have been required to present a joint defense rather than individual defenses to her claims. Each defendant had the right to present its own defense.

Mrs. Morrison contends that allowing them to do so resulted in a trial that was inherently unfair. She asserts, "Consequently, the Court allowed the defense two complete *voir dires*, two extensive opening statements, two cross-examinations of every witness, two arguments on every contested objection or motion, multiple defense experts on questions of liability and causation, and two closing arguments."[2] She also contends that "because the trial was extended by a matter of days because of the cumulative evidence presented by the Defendants and the duplication of *voir dire*, opening statements, cross-examinations, etc., the Morrisons' rebuttal expert, Dr. Hugh West, could not testify," which further prejudiced the Plaintiffs.

Mrs. Morrison has not cited to anything in the record that supports her factual assertions. In fact, at the close of the eighth day of trial, the district court commended Ms. Fouser, counsel for St. Luke's, for not doing what Mrs. Morrison's counsel alleged would occur. The court stated: "I will say that Ms. Fouser has done—I think, has been fairly restrained. Mr. Lojek, you haven't had quite the double-teaming. She has not covered the same ground, necessarily, the others have." "An appellant must support assignments of error with citations to the parts of the transcript or record relied upon." *VanderWal v. Albar, Inc.*, 154 Idaho 816, 821, 303 P.3d 175, 180 (2013); *accord* I.A.R. 35(a)(6). Mrs. Morrison has not done so.

Also, Mrs. Morrison has not presented argument and legal authority supporting the contention that in this circumstance defendants can be required to present a joint defense, nor has she presented any citations to the record supporting her claim of prejudice. Therefore, we will not consider this issue. *Cummings v. Stephens*, 157 Idaho 348, 362, 336 P.3d 281, 295 (2014).

## V.
## Did the District Court Err in Preventing Mrs. Morrison from Calling Two Witnesses to Testify?

---

[2] Mrs. Morrison admits in a footnote that defense counsel did agree to divide between them the one hour that the district court allotted each side for closing arguments.

Prior to the commencement of the sixth day of trial, the district court addressed defense motions with respect to witnesses that Mrs. Morrison intended to call to testify. One of the witnesses was a Dr. Torres, who had been deposed in the litigation but had not been listed by Mrs. Morrison as an expert she intended to call at trial. Mrs. Morrison wanted to have a portion of Dr. Torres's deposition read to the jury. Dr. Torres had previously worked in the emergency room at St. Luke's in Meridian, and Mrs. Morrison wanted his testimony regarding his practice in informing schedulers that he wanted a patient seen promptly by a cardiologist in order to support the standard-of-care opinions to which Mrs. Morrison's out-of-state expert had testified. The district court sustained the objection to the reading of Dr. Torres's deposition testimony on the grounds that either it was irrelevant because he had no personal involvement in this case or it was an expert opinion from someone who had not been disclosed as an expert witness.

On the morning of the ninth day of trial, Mrs. Morrison again requested to read a portion of Dr. Torres's deposition because she had another witness who could not attend the trial. The defense objected, and the district court sustained the objection on two grounds: (a) "[I]t is either not relevant because his conduct is not in question and he did not take part in the treatment of Mr. Morrison, or it is, by implication, an opinion testimony that needed to be disclosed prior to trial," and (b) "[S]econdarily, I still don't have a showing that he is not available."[3] On appeal, Mrs. Morrison asserts in her opening brief that Dr. Torres's testimony was "factual rather than a matter of opinion as to any issue," but she does not address the court's alternative ruling that there was no showing that Dr. Torres was unavailable. "Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis." *State v. Grazian*, 144 Idaho 510, 517–18, 164 P.3d 790, 797–98 (2007). Therefore, we will not address this issue.

Mrs. Morrison also contends that the district court erred in sustaining the defense objection to the calling of a Dr. Worst as an expert witness. Mrs. Morrison's opening brief does not include any citation to the record nor does it contain any legal argument as to why she should

---

[3] Rule 32(a)(3) of the Idaho Rules of Civil Procedure provides that all or part of the deposition testimony of a witness can be read at trial, if it is otherwise admissible, if the court finds: "(B) that the witness is at a greater distance than 100 miles from the place of trial . . . or (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena." Mrs. Morrison did not contend that she was unable to subpoena Dr. Torres, or that she had even tried to do so. In his deposition he had testified that he practiced "primarily" at a hospital 134 miles from the place of trial, but there was no evidence of where he lived, and there was an assertion that he also continued to practice occasionally in the Treasure Valley, which is within 100 miles of the place of trial.

be permitted to call as a witness an expert retained by the other side. "The argument section of the appellant's brief 'shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.' " *Bolognese v. Forte*, 153 Idaho 857, 866, 292 P.3d 248, 257 (2012) (quoting I.A.R. 35(a)(6)). Because Mrs. Morrison wholly failed to comply with Rule 35(a)(6) with respect to this issue on appeal, we will not consider it. *VanderWal*, 154 Idaho at 822, 303 P.3d at 181.

In addition, Mrs. Morrison did not present any argument showing that this alleged error affected her substantial rights. She apparently wanted to have Dr. Worst testify regarding the issue of damages, but the jury found no liability.

## VI.
### Are Respondents Entitled to an Award of Attorney Fees on Appeal?

The Respondents request awards of attorney fees on appeal pursuant to Idaho Code section 12-121. "In normal circumstances, attorney fees will only be awarded [under this statute] when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The appeal was not supported by the facts or the law. Therefore, the Respondents certainly qualify to receive awards of attorney fees under section 12-121.

## VII.
### Conclusion.

We affirm the judgment of the district court, and we award costs, including attorney fees, to Respondents.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**

16