# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45890

| | | |
|---|---|---|
| PENNY PHILLIPS, an individual; HUNTER PHILLIPS, an individual; HALLE LINDSAY, an individual, | ) ) ) ) | |
| Plaintiffs-Appellants-Cross Respondents, | ) ) ) | Pocatello, September 2019 Term |
| v. | ) ) | Filed: March 11, 2020 |
| EASTERN IDAHO HEALTH SERVICES, INC., dba EASTERN IDAHO REGIONAL MEDICAL CENTER dba BEHAVIORAL HEALTH CENTER AT EIRMC, an Idaho corporation; MATTHEW LARSEN, D.O., an individual; IDAHO BEHAVIORAL HEALTH SERVICES, LLC, dba EASTERN IDAHO RMC BEHAVIORAL HEALTH, an Idaho limited liability company, | ) ) ) ) ) ) ) ) ) ) ) | Karel A. Lehrman, Clerk |
| Defendants-Respondents-Cross Appellants, | ) ) ) | |
| and | ) ) | |
| BINGHAM COUNTY, an Idaho political subdivision; BINGHAM COUNTY SHERIFF'S OFFICE, an Idaho political subdivision; CRAIG T. ROWLAND, in his official capacity as Bingham County Sheriff; JORDYN NEBEKER, an individual employed by Bingham County, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The district court's order granting summary judgment is reversed, the judgment entered is vacated, and the case is remanded.

Beard St. Clair Gaffney, PA, Idaho Falls, for appellants Penny Phillips, Hunter Phillips and Halle Lindsay. John M. Avondet argued.

1

Hawley Troxell Ennis & Hawley, LLP, Idaho Falls, for respondents Eastern Idaho Health Services, Inc., Matthew Larsen, and Idaho Behavioral Health Services, LLC. Marvin M. Smith argued.

———————————————

STEGNER, Justice.

This case involves a medical malpractice lawsuit brought by Penny Phillips, her son, and daughter, against various Idaho Falls health care providers. Phillips and her children allege the health care providers were negligent in the care they provided to Phillips' husband, Scott Phillips, immediately prior to his death by suicide. The district court rejected the Phillipses' claims by granting summary judgment in favor of the health care providers. The Phillipses appeal several adverse rulings by the district court. The health care providers cross-appeal contending the district court abused its discretion in amending the scheduling order to allow the Phillipses to name a rebuttal expert. For the reasons set out below, we reverse and remand the district court's dismissal of the Phillipses' case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Scott Phillips' Arrest, Admission to and Discharge from Behavioral Health Center, and Subsequent Suicide.

Around 11:05 p.m. on December 7, 2015, Scott Phillips (Scott) was pulled over by Bingham County Deputy Sheriff Jordyn Nebeker and taken into custody for suspicion of driving under the influence. During this encounter, an unquestionably intoxicated Scott told Deputy Nebeker he was planning to commit suicide with a loaded pistol that he had in his vehicle. Deputy Nebeker transported Scott first to the Bingham County Jail to undergo a breath test, and then to the emergency room at Eastern Idaho Regional Medical Center (EIRMC) in Idaho Falls to have him examined by a Designated Examiner (DE).[1] Deputy Nebeker cited Scott for DUI with excessive alcohol concentration and having an open container of alcohol in his SUV. Scott

_____

[1] A designated examiner (DE) is a mental health professional, such as a psychologist or psychiatrist, designated by the Idaho Department of Health and Welfare to assist in determining if a patient should be involuntarily committed to a mental health facility. I.C. §§ 66-317(5), 66-318. A DE is a trained mental health professional qualified "in the diagnosis and treatment of mental . . . illnesses or conditions." I.C. § 66-317(5). A person may be detained at a hospital if there is "reason to believe that . . . the person's continued liberty poses an imminent danger to that person . . . as evidenced by a threat of substantial physical harm[.]" I.C. § 66-326(1). If a person is detained, "evidence supporting the claim of . . . imminent danger must be presented to a duly authorized court[,]" which may issue a temporary custody order if the court agrees that the person is an imminent danger to himself or others, or is gravely disabled. I.C. § 66-326(1)–(2). A DE must then examine the person; if the DE finds that the person is mentally ill and "likely to injure himself[,]" the county prosecutor must petition the court for the person's involuntary commitment under Idaho Code section 66-329.

arrived at the emergency room around 1:05 a.m. on December 8, 2015, and was evaluated by an EIRMC psychiatrist approximately fifty minutes later. Scott's breath test at the jail showed that his breath alcohol level was .220, and at EIRMC his blood alcohol concentration measured .263. However, because Scott voluntarily admitted himself, he was never evaluated by a DE.

Scott was admitted to the Behavioral Health Center (BHC) at EIRMC around 3:30 a.m. Dr. Matthew Larsen evaluated Scott at approximately 9:00 a.m. that morning. At about 12:30 p.m. that same day, Scott asked to leave BHC. He denied suicidal ideation and stated that he wanted "to go reconcile with [his] wife" and "need[ed] to work." He was not examined by Larsen before he was discharged. On the discharge record, Larsen noted that Scott "left the hospital AMA [against medical advice]." Scott left BHC sometime between 12:45 and 1:00 p.m. on December 8, 2015. EIRMC contends that Scott signed a form confirming he was discharging himself against medical advice. However, the Phillipses have questioned EIRMC's contention because the form was not initially provided to them as a result of their records request.

After leaving the hospital, Scott checked into an Idaho Falls hotel. He committed suicide by hanging himself in the hotel sometime between 3:00 p.m. December 9, 2015, and 2:00 p.m. December 10, 2015. Scott was survived by his wife, Penny Phillips, and his two children, son Hunter Phillips and daughter Halle Lindsay.

**B. Procedural History.**

On January 24, 2017, Penny Phillips, Hunter Phillips, and Halle Lindsay (collectively the Phillipses) filed this wrongful death lawsuit against Eastern Idaho Health Services, Inc., Dr. Matthew Larsen, and Idaho Behavioral Health Services (collectively the Medical Defendants). Also named as defendants were Bingham County, Bingham County Sheriff's Office, Bingham County Sheriff Craig T. Rowland, and Deputy Jordyn Nebeker (collectively Bingham County Defendants). The Phillipses filed an amended complaint on August 2, 2017.

The Phillipses brought three claims focused on the Bingham County Defendants: (1) a wrongful death claim alleging gross negligence against the Bingham County Defendants, asserting they had breached the duty they owed Scott; (2) a wrongful death claim against Bingham County, the Bingham County Sheriff's Office, and Sheriff Rowland based on negligent hiring, training, and supervising of Deputy Nebeker; and (3) a negligence *per se* claim against

3

the Bingham County Defendants. The Phillipses also brought a medical malpractice claim against the Medical Defendants.[2]

1. Discovery Disputes.

The lawsuit and the ensuing discovery set off a series of disputes surrounding depositions of EIRMC's corporate designee and the local consulting physicians the Phillipses retained to familiarize their expert witness, Dr. Fred Moss, with the community standard of care.

The Phillipses sought to depose an EIRMC-designated representative, as authorized in I.R.C.P. 30(b)(6). EIRMC and the Phillipses disagreed about the scope of the representative's deposition. The Phillipses moved to compel the deposition on their proposed topics. EIRMC filed a motion for a protective order, objecting to proposed "Topic 9" for the deposition of its corporate designee. The Phillipses sought a deposition of EIRMC's representative on the topic of "[t]he community standard of health care practice, as that term is used in Idaho Code §§ 6-1012 & 1013, for psychiatrists practicing medicine in Idaho Falls, Idaho, during December 2015." The district court held a hearing at which it denied the motion to compel and granted EIRMC's protective order with respect to Topic 9.

The Phillipses filed the Declaration of Fred Moss, M.D., in March 2017. Moss's declaration indicated that he had consulted with two local psychiatrists, Dr. Kathleen Erwin and Dr. Kayne Kishiyama. EIRMC sought to depose Kishiyama. The Phillipses tentatively agreed to a limited-scope deposition of Kishiyama, but objected to the proposed topics. EIRMC sought to compel this deposition. The Phillipses responded by seeking a protective order regarding the scope of the deposition. The district court held a hearing and granted the motion to compel, and granted in part and denied in part the motion for protective order with respect to the scope of the deposition. EIRMC then also scheduled the deposition of Erwin. The Phillipses agreed to the scope of her deposition based on the district court's order for Kishiyama's deposition.

2. Motion to Strike Expert Testimony of Moss and Motions for Summary Judgment.

The Phillipses timely filed their expert witness disclosures, naming Moss as their sole expert witness in early October 2017. The disclosures included Moss's opinions. The Phillipses then filed a motion for partial summary judgment on October 24, 2017.

---

[2] The Bingham County Defendants moved for, and were granted, summary judgment against the Phillipses on all claims. That decision has not been appealed, and the only claim that proceeded was the Phillipses' medical malpractice claim against the Medical Defendants.

4

On November 16, 2017, the Medical Defendants moved to strike Moss's testimony. The Phillipses filed a memorandum in opposition. The Phillipses also filed a second declaration of Moss on November 30, 2017. The Medical Defendants then moved to strike Moss's second declaration.

On the same day that the Medical Defendants moved to strike Moss's expert testimony, they also moved for summary judgment and filed supporting memoranda. The Phillipses filed memoranda in opposition.

3.  Amended Scheduling Order.

On November 20, 2017, the Medical Defendants filed their required disclosure of expert witnesses. The Phillipses subsequently moved to amend the scheduling order, requesting that they be allowed to submit a rebuttal expert's opinion. The Medical Defendants filed an objection. The Phillipses then filed an amended motion to amend the scheduling order on November 30, 2017, accompanied by a supporting memorandum. They also filed Moss's additional declaration on November 30, 2017.

4.  The Hearing on Pending Motions and the District Court's Orders.

The district court held a hearing on December 21, 2017, regarding the multiple pending motions, in particular the Phillipses' motion to amend the scheduling order, the Medical Defendants' motion to strike Moss's expert testimony, and the parties' respective cross-motions for summary judgment. At the hearing, the district court granted the Phillipses' motion to amend the scheduling order, effectively allowing the Phillipses a rebuttal expert. After receiving additional requested briefing, the district court granted the Medical Defendants' motions to strike Moss's declarations on January 24, 2017. The district court also denied the Phillipses' motion for partial summary judgment and granted the Medical Defendants' motion for summary judgment. The Phillipses unsuccessfully moved for reconsideration. The Phillipses' timely appeal followed, as did the Medical Defendants' cross-appeal.

## II. STANDARD OF REVIEW

This Court reviews challenges to the district court's evidentiary rulings under the abuse of discretion standard. *Hall v. Rocky Mountain Emergency Physicians, LLC*, 155 Idaho 322, 326, 312 P.3d 313, 317 (2013) (citation omitted). Evidentiary rulings that constitute an abuse of discretion will not be reversed unless "a substantial right of the party is affected." *Van v. Portneuf Med. Ctr.*, 156 Idaho 696, 701, 330 P.3d 1054, 1059 (2014) (citation omitted). A

district court's decision to grant or deny motions for protective orders or motions to compel will only be reversed for a clear abuse of discretion. *Quigley v. Kemp*, 162 Idaho 408, 410, 398 P.3d 141, 143 (2017) (citation omitted).

When this Court reviews for an abuse of discretion, this Court determines "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

"On appeal from [a] grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012) (citation omitted). "Summary judgment is proper 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Samples v. Hanson*, 161 Idaho 179, 182, 384 P.3d 943, 946 (2016) (quotation omitted).

> When considering "whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Arregui*, 153 Idaho at 804, 291 P.3d at 1003.
>
> "The admissibility of expert testimony, however, is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment." *Id.* With respect to the threshold issue of admissibility, "[t]he liberal construction and reasonable inferences standard does not apply." Instead, "[t]he trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible."

*Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014) (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002)).

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, 'this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment.' This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)).

### III.    ANALYSIS

**A. The district court abused its discretion in granting EIRMC's motion for a protective order preventing the Phillipses from conducting an I.R.C.P. 30(b)(6) deposition regarding the community standard of care.**

During discovery, the Phillipses sought to have EIRMC designate a corporate representative to testify by deposition about the community standard of health care practiced in Idaho Falls at the time Scott received treatment. Specifically, the Phillipses sought to depose EIRMC's corporate designee regarding "[t]he community standard of health care practice, as that term is used in Idaho Code §§ 6-1012 & 1013, for psychiatrists practicing medicine in Idaho Falls, Idaho, during December 2015."

Rule 30(b)(6) authorizes a party to direct a subpoena to an organization (in this case EIRMC) and to require that organization to designate an individual who would then be questioned regarding a particular topic. "The persons designated must testify about information known *or reasonably available* to the organization." *Id.* (italics added). EIRMC sought a protective order precluding testimony about this specific topic. In granting a protective order, the district court acknowledged the novelty of the issues raised in the motion, but concluded that this topic was an area for competent expert testimony and should therefore be excluded from the scope of a Rule 30(b)(6) deposition of EIRMC's designated representative.

The Phillipses argue that the district court erred by conflating the scope of discovery with the admissibility of evidence. The Phillipses argue that the community standard of health care practice is an issue of fact, not opinion, that may be obtained through discovery. The Phillipses argue that Idaho Code section 6-1012 does not limit discovery of the applicable standard of health care practice to expert sources.

EIRMC counters arguing that the Phillipses' argument—that the "fact" and "opinion" aspects of the community standard of health care practice may be distinguished—is immaterial, relying on the plain language of Idaho Code section 6-1013, which requires that a plaintiff establish both aspects of a medical malpractice claim by expert testimony. EIRMC argues that allowing inquiry into this topic would force it to provide expert testimony as a result of a Rule 30(b)(6) corporate deposition. EIRMC also contends that because health care entities and the physicians they employ are not necessarily held to the same standard of care, this topic would encompass a standard of care to which EIRMC would be unable to testify.

We agree with EIRMC that a deposition of a corporate designee under I.R.C.P. 30(b)(6) is not the proper method to elicit opinion. However, we disagree with EIRMC and the district court that the Phillipses should be precluded from conducting discovery about the applicable standard of health care via a Rule 30(b)(6) deposition. The reason is because the standard of health care practiced in a community is a factual determination, not an opinion. Consequently, the district court erred in concluding otherwise.

Under the Idaho Medical Malpractice Act, a plaintiff alleging medical malpractice must,

as an essential part of his or her case in chief, affirmatively prove by *direct expert testimony* . . . that [the] defendant then and there negligently failed to meet the *applicable standard of health care practice* of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such [defendant] and as such standard then and there existed with respect to the class of health care provider that such defendant then and there belonged to . . . .

I.C. § 6-1012 (italics added). Idaho Code section 6-1013 further states that "[t]he applicable standard of practice *and* such a defendant's failure to meet said standard must be established in such cases . . . by testimony of one (1) or more knowledgeable, competent expert witnesses[.]" I.C. § 6-1013 (italics added). In other words, as a threshold matter in a medical malpractice case, a plaintiff must prove both knowledge of the applicable standard of health care and the breach of that standard by direct expert testimony. I.C. §§ 6-1012, 6-1013. An out-of-area expert must be familiar with the applicable standard of practice for that expert testimony to pass foundational muster under Idaho Code section 6-1013. This familiarization must be sufficient to give rise to "actual knowledge" of the applicable standard. *See Suhadolnik v. Pressman*, 151 Idaho 110, 116, 254 P.3d 11, 17 (2011).

However, the question presented by this inquiry, i.e., what is the standard of health care in the community, is a question of fact, not opinion. While the expert must be familiar with the local standard of care in order to render an opinion that a treatment provider breached that standard of care, the underlying foundation—what constitutes the local standard of care—is fact driven.

EIRMC argues that *Grover v. Isom*, 137 Idaho 770, 53 P.3d 821 (2002), states that both the applicable standard of care and breach of that standard can only be established through expert testimony. EIRMC's reliance on *Grover* is misplaced. The issue in *Grover* was *admissibility* of the disputed expert's testimony at trial, not whether the standard of care was an opinion. *See id.*

8

at 774–75, 53 P.3d at 825–26. Moreover, the majority in *Grover* wrote: "This statute [Idaho Code section 6-1012] requires proof of the standard of care and that the standard of care is to be determined by reference to the community standard. This is not a procedural statute. It defines a societal norm—the standard of care." *Id.* at 775, 53 P.3d at 826. A societal norm connotes a factual determination, not an opinion. The opinion goes on to quote Idaho Code section 6-1013 when holding "that the witness [must] possess 'professional knowledge and expertise coupled with *actual knowledge* of the applicable said community standard.'" *Id.* (italics added). "Actual knowledge" is not an opinion—rather it is a fact-driven determination. *Grover* does not support EIRMC's argument that the standard of care in a particular locale is an opinion.

Here, the Phillipses' proposed topic of inquiry requested that the corporate designee answer questions about "[t]he community standard of health care practice . . . for psychiatrists practicing medicine in Idaho Falls, Idaho, during December 2015." The Phillipses did not ask whether the community standard had been followed, which would elicit an opinion. The foundational demands of Idaho Code sections 6-1012 and 6-1013 govern medical malpractice expert testimony. These sections do not foreclose discovery about the community standard of health care practice from a corporate defendant. To hold otherwise would be to preclude the Phillipses from conducting necessary discovery, which is allowed under Idaho's Rules of Civil Procedure. The scope of discovery encompasses far more than what will be considered admissible under the Idaho Rules of Evidence. I.R.C.P. 26(b)(1)(A). Accordingly, the district court abused its discretion in granting EIRMC's protective order because the facts underlying the standard of health care practice do not depend upon opinions.

EIRMC also argues that it would not be able to testify to the standard of health care practice for the psychiatrists providing services at its facility. EIRMC contracted with the medical group Idaho Behavioral Health Services (IBHS) to provide psychiatric services at Behavioral Health Center (BHC), the facility operated by EIRMC. EIRMC relies on *Morrison v. St. Luke's Regional Medical Center*, 160 Idaho 599, 606, 377 P.3d 1062, 1069 (2016), to argue that it, as an entity, can only testify to its own standards, not those of its employees or those contracted by it to provide psychiatric services through IBHS.

*Morrison* was a wrongful death action filed against a group of emergency physicians and a specific emergency physician, Joachim Franklin, who was employed by the group. *Id.* at 601, 377 P.3d at 1064. Barbara Morrison, the plaintiff and personal representative of her late

9

husband's estate and *guardian ad litem* for her minor children, claimed that the physicians group was negligent in failing to ensure that the physician it employed knew how to specify that her husband should receive an expedited appointment with a cardiologist. *Id.* at 601–02, 377 P.3d at 1064–65. Morrison's husband had been seen by Franklin in the emergency department for chest pains; Franklin correctly determined that Morrison's husband was not having a heart attack, but discharged him with a recommendation that he see a cardiologist at the hospital. *Id.* at 601, 377 P.3d at 1064. When Morrison called the hospital to schedule an appointment for her husband, she was given the earliest non-urgent appointment, but could have secured an earlier appointment had Franklin properly indicated on her husband's emergency-room record that an urgent appointment was needed. *Id.* at 601–02, 377 P.3d at 1064–65.

The district court found that Morrison's expert witness had not established a proper foundation to testify to the standard of care applicable to the group of emergency physicians and its training of Franklin, the group's employee. *Id.* at 603–05, 377 P.3d at 1066–68. On appeal, Morrison claimed that her expert had established that the standard of care for emergency physicians was the national standard of care, and that because the group *employed* emergency physicians, the group itself was therefore held to a national standard of care as well. *Id.* at 606, 377 P.3d at 1069. However, the facts in *Morrison* are not analogous to this case. In *Morrison*, "[t]he jury by its special verdict found that Dr. Franklin did not 'fail to meet the local standard of health care practice in his treatment of Mitchell Morrison.' Therefore, there would be no basis for holding that Emergency Medicine [the group] failed to properly train him [Dr. Franklin]." *Id.* at 607, 377 P.3d at 1070.

EIRMC argues that because *Morrison* distinguishes between an entity and its employees with respect to the applicable standard of care, it is unable to testify to the standard of care of its employees or contractors. EIRMC contends that this distinction makes the applicable standard of care not "known or reasonably available" under I.R.C.P. 30(b)(6), and therefore not discoverable in a deposition of its corporate designee. We disagree. *Morrison* does not stand for the proposition that an entity cannot know the standard of care applicable to its employees or persons with whom it contracts to dispense care. To the extent the language employed in *Morrison* suggests such a result, it is *dicta*. As noted in the language quoted from *Morrison*, the jury found Dr. Franklin had not violated the applicable standard of care. Because of that finding, Franklin's group, Emergency Medicine, could not have been liable. Consequently, EIRMC's

10

reliance on *Morrison* to avoid answering the questions the Phillipses sought to pose is misplaced. Further, to the extent EIRMC contends the standard of care is unknowable or otherwise not reasonably available, such a concession would support a finding that the standard of care is "indeterminable" as that term has been used in this realm, and could enable the Phillipses to prove their case by other means. *See, e.g.*, *Lepper v. E. Idaho Health Servs., Inc.*, 160 Idaho 104, 115, 369 P.3d 882, 893 (2016). If EIRMC wants to answer questions about the standard of care by stating that the standard of care is not "known or reasonably available," such a response would be highly relevant.

The federal analog to I.R.C.P. 30(b)(6), found in Federal Rule of Civil Procedure 30(b)(6), was designed to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2103 (3d ed. 2019) (quoting Fed. R. Civ. P. 30(b)(6) advisory committee's note to 1970 amendment). Rule 30(b)(6) depositions carry with them "an implicit obligation to prepare" the corporate designee with respect to the subjects listed on the Rule 30(b)(6) notice. *Id.* When a responding party complains about the unfair burden of preparing such a designee, "[t]he starting point . . . is to compare the risks of 'bandying,' which Rule 30(b)(6) was designed to cure." *Id.* To hold that the standard of health care practice cannot, as a rule, be discovered in a Rule 30(b)(6) deposition of a corporate designee would encourage the bandying sought to be curbed by this rule. Otherwise, entities would be able to deflect requests for discovery by asserting ignorance of the procedures or policies of their employees and contractors, just as was done here.

Consequently, we find the district court abused its discretion by restricting the scope of the Phillipses' 30(b)(6) deposition of EIRMC, and reverse its grant of EIRMC's motion for a protective order.

**B. The district court abused its discretion by allowing depositions of the local familiarization experts because it did not apply the correct standard.**

During discovery, the Medical Defendants sought to depose the two local consulting physicians who were used to familiarize Moss with the community standard of health care practice. The Phillipses moved for a protective order with respect to several proposed topics. In response, the Medical Defendants filed a motion to compel. The district court partially granted

11

the motion to compel, and partially granted the Phillipses' motion for a protective order. The depositions of both physicians proceeded under the scope set out by the district court.

On appeal, the Phillipses argue that both physicians were retained solely for trial preparation to provide information to their testifying expert, and accordingly that these physicians are covered by the scope of Idaho Rule of Civil Procedure 26(b)(4)(D) as experts "employed only for trial *preparation*." (Italics added.) The Phillipses claim that depositions of these experts should not be allowed absent a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." I.R.C.P. 26(b)(4)(D)(ii).

The Medical Defendants maintain that this Court's recent decision in *Quigley*, 162 Idaho 408, 398 P.3d 141, allows local consulting physicians to be deposed even though Rule 26(b)(4)(D) seems to afford them protection from being deposed. The Medical Defendants argue that *Quigley* naturally allows a party to depose non-testifying medical experts retained to provide foundation for a testifying expert witness, without a showing of exceptional circumstances under I.R.C.P. 26(b)(4)(D). We disagree. It is still necessary for a litigant to establish "exceptional circumstances" as required by I.R.C.P. 26(b)(4)(D) before a deposition of an expert retained solely for purposes of preparation for trial may occur.

While the depositions have already occurred and it is therefore impossible to undo what has been done, we address the issue because it is likely to arise in the future and as a result providing guidance for future litigation will be helpful. *See, e.g.*, *Idaho Sch. for Equal Educ. Opportunity v. Idaho State Bd. of Educ.*, 128 Idaho 276, 284, 912 P.2d 644, 652 (1996) (citation omitted). The Idaho Rules of Civil Procedure distinguish between experts expected to testify and those who are not expected to testify. *Compare* I.R.C.P. 26(b)(4)(A)(i)–(ii), *with* I.R.C.P. 26(b)(4)(D). Any person who has been disclosed as an expert witness, and who is expected to testify, may be deposed by a party. I.R.C.P. 26(b)(4)(A)(iii). On the other hand, a party ordinarily "may not, by interrogatories or deposition, discover facts known or opinions held by" an expert employed only for trial preparation. I.R.C.P. 26(b)(4)(D). Non-testifying experts may be deposed only as provided in the Rule. A deposition may only occur upon a "showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." I.R.C.P. 26(b)(4)(D)(ii).

In medical malpractice cases in Idaho, background provided by local specialists is a widely recognized way for an out-of-area expert witness to obtain "actual knowledge" of the standard of care necessary to be able to testify under Idaho Code sections 6-1012 and 6-1013. *See Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17; I.C. §§ 6-1012, 1013. Accordingly, the local "familiarization" expert is a ubiquitous part of medical malpractice cases in Idaho. *See, e.g.*, *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17; *Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

An out-of-area expert's failure to identify the local physicians consulted does not render that expert's affidavit inadmissible under Idaho Code section 6-1013. *Bybee v. Gorman*, 157 Idaho 169, 179–80, 335 P.3d 14, 24–25 (2014). However, the identity of local consulting physicians is discoverable under I.R.C.P. 26(b)(1)(A)'s general scope of discovery. *Quigley*, 162 Idaho at 412, 398 P.3d at 145. In *Quigley*, we held that discovering the identity of local consultants enabled opposing parties to "explore and raise issues pertaining to [the expert's] actual knowledge of the local standard of care." *Id.*

> If [the out-of-area expert] were to testify at trial that she consulted with a local physician assistant about the standard of care without revealing the person's identity (which we agree may be permissible), a natural question to ask on cross-examination would be "who did you talk to." The answer to this question could be important because it might reveal, for example, that the conversation did not actually take place. . . . [T]he point is that [defendant doctor] has a legitimate interest in knowing who the physician assistant is so he can prepare his defense.

*Id.* However, this Court did not reach the issue of the propriety of deposing local consultants, and what showing would be necessary for the opposing party to do so. Today we clarify that local familiarization experts are non-testifying experts within the scope of I.R.C.P. 26(b)(4)(D). Accordingly, a party may depose a local familiarization expert only upon a "showing [of] exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." I.R.C.P. 26(b)(4)(D)(ii).

In analyzing whether a court has abused its discretion, this Court determines "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194 (citation omitted). A district court fails to recognize the outer bounds of its discretion if it fails to state or apply the correct legal standard. *See Crowley v. Critchfield*, 145 Idaho 509, 513, 181 P.3d 435, 439 (2007).

13

There has been no showing that the district court applied the "exceptional circumstances" test set out in I.R.C.P. 26(b)(4)(D)(ii). In this regard, the district court erred. *Quigley* clearly allows discovery of the identity of a local familiarization expert, 162 Idaho at 412, 398 P.3d at 145, but that knowledge does not also entitle a party to depose that expert without showing *why* the information sought cannot be obtained by other means. The district court therefore erred by not requiring the Medical Defendants to show exceptional circumstances before allowing them to depose Kishiyama and Erwin. However, because the depositions have already occurred, it does not constitute reversible error. We clarify the issue because the Phillipses appealed the ruling and to provide guidance in other cases going forward. Depositions were taken of both local familiarization experts. That bell has been rung. It cannot now be unrung. While the district court erred in allowing the deposition to proceed without applying the applicable test, there is nothing that can now be done to cure the error.

**C. The district court abused its discretion when it struck Moss's expert testimony because Moss demonstrated the requisite actual knowledge of the local standard of care.**

The Medical Defendants brought a motion to strike Moss's testimony. The district court granted the motion, finding that the Phillipses had failed to lay an adequate foundation for Moss's testimony as an expert witness, and that without that foundation, his testimony was inadmissible.

On appeal, the Phillipses have advanced several alternative grounds for finding that Moss established the requisite foundation under Idaho Code sections 6-1012 and 6-1013 to be able to testify. The Phillipses first argue that a national standard replaced the local standard of care because (1) EIRMC and BHC required employees and contractors to be board-eligible, which in effect adopted the national standard of care for board-certified physicians; and (2) BHC had adopted the APA guidelines as its standard of care. The Phillipses alternatively argue that their expert was adequately familiar with the local standard of care as a result of his communication with the two local familiarization experts.

Out-of-area experts are contemplated by Idaho's Medical Malpractice Act. Idaho Code section 6-1013 "expressly allows an out-of-state/out-of-area expert to testify so long as the expert 'adequately' familiarizes himself with the standards and practices applicable in a given case." *Quigley*, 162 Idaho at 411, 398 P.3d at 144 (quoting I.C. § 6-1013). A trial court may

14

strike the testimony of a plaintiff's malpractice expert if an adequate foundation has not been laid. *See Dulaney*, 137 Idaho at 164, 45 P.3d at 820.

> The expert's testimony must establish: (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with a reasonable degree of medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed.

*Hall*, 155 Idaho at 326, 312 P.3d at 317 (quoting I.C. § 6-1013). The "applicable community standard of care" is defined in Idaho Code section 6-1012. An expert witness for a plaintiff in a medical malpractice case must demonstrate "actual knowledge" of the applicable community standard of health care practice. I.C. § 6-1013.

An out-of-area expert witness may familiarize himself with the local standard of care through several means. An expert witness may "inquir[e] of a local specialist." *Mattox*, 157 Idaho at 476, 337 P.3d at 635 (citation omitted). "When this method is employed, the [out-of-area expert's] affidavit must provide adequate reason to believe that the local specialist interviewed has actual knowledge of the applicable standard of care." *Id.* (citing *Dulaney*, 137 Idaho at 166–67, 45 P.3d at 822–23).

However an out-of-area expert becomes familiar with the local standard of care, the expert's affidavit "must state *how* he became familiar with the local standard of care." *Hall*, 155 Idaho at 327, 312 P.3d at 318 (italics added) (citing *Dulaney*, 137 Idaho at 164, 45 P.3d at 820). There is no "'magic language' . . . required to demonstrate the requisite familiarity with the applicable standard of health care practice, [but] the testimony of the proffered expert must meet minimum requirements as a prerequisite to admission of that expert's opinion." *Samples*, 161 Idaho at 183, 384 P.3d at 947.

> The guiding question is simply whether the affidavit alleges facts which, taken as true, show the proposed expert has actual knowledge of the applicable standard of care. In addressing that question, courts must look to the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard.

*Mattox*, 157 Idaho at 474, 337 P.3d at 633.

1. The district court did not abuse its discretion by finding that a national standard of care had not superseded the local standard of health care practice for Idaho Falls in December 2015.

15

We have acknowledged that "for board-certified specialists, the local standard of care is equivalent to the national standard of care." *Buck v. St. Clair*, 108 Idaho 743, 745, 702 P.2d 781, 783 (1985), *disavowed on other grounds by Grimes v. Green*, 113 Idaho 519, 746 P.2d 978 (1987). This Court has extended this national standard of care to those not actually board-certified but holding themselves out as such. *Samples*, 161 Idaho at 184, 384 P.3d at 948. The Phillipses argue that the national standard superseded the local standard of health care practice for Idaho Falls, Idaho, in December 2015, because a national standard applied to Larsen as a board-*eligible* specialist. The Phillipses rely on *Samples* for the proposition that a specialist who is board-*eligible*, but not board-certified, should be held to a national standard required of a board-certified specialist.

This reliance is misplaced. In *Samples*, the defendant doctor had been board certified, but allowed his certification to lapse in anticipation of retirement three years prior to the alleged negligent incident. *Samples*, 161 Idaho at 185, 384 P.3d at 949. This Court held that the defendant doctor was still subject to the national standard of care required from board-certified specialists because he had "received the rigorous training and *become board certified*[.]" *Id.* at 184, 384 P.3d at 948 (italics added). Here, Larsen was not yet board certified in December 2015. Rather, he was only board-*eligible*. Unlike the defendant doctor in *Samples*, Larsen had *never* been board certified. There is no indication that Larsen held himself out as a board-certified specialist. Accordingly, the district court did not abuse its discretion in finding that the applicable standard of care was not national.[3]

2. The district court did not abuse its discretion by finding that the APA Practice Guidelines did not establish a national standard of care by which Larsen should be measured.

The Phillipses also argue that a national standard of care applies in this case in the form of the APA Practice Guidelines. The Phillipses rely on portions of the deposition of Dr. Craig Denny, in which he testified that he himself followed the APA Practice Guidelines, and that he believed that the staff at the Behavioral Health Center did as well.

One means of obtaining knowledge of the local standard of care is to review a deposition of a local specialist who states "that the local standard does not vary from the national standard,

[3] However, simply saying the standard of care was not national because Larsen was not board-certified does not end the inquiry. As noted, Larsen was board-*eligible* in December 2015. In addition, all psychiatrists at BHC were required to be board-eligible at that time. Consequently, there may be requirements for board eligibility which could establish certain components of the local standard of care. In addition, Larsen testified he did not find the examination for board certification, which he took and passed in August 2016, to be substantively different than his training for board-eligibility. This evidence would also be relevant to the local standard of care.

16

coupled with the [reviewing] expert's personal knowledge of the national standard[.]" *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (citing *Kozlowski v. Rush*, 121 Idaho 825, 828–29, 828 P.2d 854, 857–58 (1992)). External materials or documents may also assist in formulating and establishing the applicable standard of health care. *Id.* at 51–52, 995 P.2d at 821–22. However, this Court has required that the standard of care must be "clearly articulate[d] . . . for the particular time, place and specialty at issue[.]" *Suhadolnik*, 151 Idaho at 118, 254 P.3d at 19. Regulations or other materials that anticipate variances between health care facilities' individual policies and procedures do not "serve to replace a local standard of care" when they do "not govern the actual provision of care[.]" *Navo v. Binhgam Mem'l Hosp.*, 160 Idaho 363, 374, 373 P.3d 681, 692 (2016).

In *Perry*, this Court held that the plaintiff's expert in a medical malpractice case had established proper foundation when she first reviewed the depositions of three hospital nurses and then read the nursing text they referred to and had relied on in their testimony. *Perry*, 134 Idaho at 52, 995 P.2d at 822. All three nurses alluded to this nursing text in their depositions, referring to its provision for giving intramuscular injections as the "universal standard" that did not differ between localities. *Id.* The depositions, "coupled with [the expert's] subsequent review of the text identified by the nurses as providing the standard for intramuscular injections, gave [the expert] a sufficient foundation to testify to the local standard of care." *Id.*

The Phillipses argue that the APA Practice Guidelines have supplanted the local standard of health care practice, and that Denny's and Larsen's reference to the APA Practice Guidelines constituted sufficient agreement with this assertion. The Phillipses rely on Denny's testimony that he himself follows the APA Practice Guidelines. When Denny was asked if the standard of health care practice for psychiatrists was consistent with the standards embodied by the APA guidelines, he answered:

> The difficulty with answering the question is that I do not have a role in which I'm able to direct and control the actions, the behaviors, the decisions made by other staff. I can answer for myself that I believe I followed all of the standards that would be considered standards of the APA, and that in my working with the Behavioral Health Center that I followed those standards and the staff that I work with followed those standards. And, therefore, I can say that in the context of my personal experience, yes.

17

The district court held that Denny's answers did not *establish* the local standard of health care practices. The district court recognized that deposition testimony could be part of the basis of an expert witness's foundational knowledge, but noted that Denny's deposition testimony

> failed to articulate which elements of the APA guidelines he applies in practice, or how they define the local standard of care. His testimony fails to provide any indicia or specific elements of the APA that were applicable to defining the local standards for Idaho Falls, Idaho in December 2015.

The district court did not abuse its discretion in holding that Denny's testimony did not establish that the APA guidelines defined the standard of care. The problem with Denny's testimony lies in the fact that it is heavily qualified. Accordingly, the district court acted within the boundaries of Idaho's medical malpractice law with respect to the foundational requirements for expert witnesses when it held that Moss was not familiarized with the local standard of care by review of this deposition *alone*. Deposition testimony relied upon for an expert's foundational knowledge of the standard of care must clearly and affirmatively set out what that standard is. *Suhadolnik*, 151 Idaho at 118, 254 P.3d at 19; *Morrison*, 160 Idaho at 606, 377 P.3d at 1069.

However, we caution that Denny's disclaimers and equivocations do not render his testimony entirely useless to Moss. Denny's comments can certainly *inform* Moss's determination of the applicable local standard. If particular expectations of the APA guidelines do indeed help establish the standard of care, then testimony to that effect, however qualified, should not be disregarded. Nevertheless, we affirm the district court because it did not abuse its discretion.

3. The district court abused its discretion in finding that the two local familiarization experts had not familiarized Moss with the applicable local standard of care.

The Phillipses also argue that, if the applicable standard of care is local, not national, their expert was properly familiarized with this standard of care by consulting the two local specialists, Kishiyama and Erwin. The district court found that Kishiyama could not have familiarized Moss with the standard for (1) the specialty at issue, or (2) the time period at issue. Second, the district court found that Erwin could not have familiarized Moss with the standard for (1) the time period at issue, or (2) the community at issue. The basis of these findings was that these local familiarization experts purportedly could not show actual knowledge of the applicable standard of care at the time the care was provided. For the following reasons, we hold that Moss was properly familiarized with the local standard of care by Kishiyama and Erwin.

18

When determining whether a proposed out-of-area expert witness has demonstrated "actual knowledge" of the applicable standard of care, this Court looks to "the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine—employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard." *Mattox*, 157 Idaho at 474, 337 P.3d at 633. A medical malpractice plaintiff must be able to demonstrate that the local familiarization consultants had actual, personal knowledge of this standard themselves. *Id.* at 475–76, 337 P.3d at 634–35 (citing *Arregui*, 153 Idaho at 803, 291 P.3d at 1002; *Dulaney*, 137 Idaho at 162–63, 45 P.3d at 818–19); *see also Suhadolnik*, 151 Idaho at 118–19, 254 P.3d at 19–20 (distinguishing case from *Kozlowski*, *Perry*, and *Hayward v. Jack's Pharmacy*, 141 Idaho 622, 115 P.3d 713 (2005), where each expert "in addition to speaking to a local specialist, also reviewed *multiple* depositions of persons knowledgeable of the local standard"). "Actual knowledge" of the applicable standard of care can be shown when a local familiarization expert is "sufficiently familiar with the defendant's specialty" for the relevant timeframe. *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17; *see also* I.C. § 6-1012.

### a. The district court abused its discretion in determining that Kishiyama could not familiarize Moss with the applicable standard of care.

The district court found that Kishiyama could not have familiarized Moss with the applicable standard of care for psychiatrists in Idaho Falls, Idaho, in December 2015. The district court drew this conclusion even though Kishiyama was a psychiatrist practicing in Idaho Falls at the time Scott was treated. The district court did so because (1) the applicable specialty at issue was that for inpatient psychiatrists, not outpatient psychiatrists, and (2) Kishiyama had not practiced psychiatry in an inpatient setting in Idaho Falls since 2008. The district judge apparently adopted the Medical Defendants' definition of the relevant specialty as that of an "inpatient specialist" psychiatrist. The district court pointed to the time period between 2008 and 2015 and found that the Phillipses had not offered anything "to establish that Dr. Kishiyama remained attentive to the standards of care in an inpatient setting." In so doing, the district court abused its discretion by failing to apply the legal standards applicable to the specific choices available to it. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194 (citation omitted).

When an out-of-area expert consults with a local specialist, that specialist need not have practiced in the identical field as the defendant health-care provider in order to familiarize the expert with the local standard of care, as long as the consulting specialist is sufficiently familiar

19

with the defendant's field of practice. *See Hall*, 155 Idaho at 329, 312 P.3d at 320 (citing *Suhadolnik*, 151 Idaho at 116, 254 P.3d at 17); *see also Newberry v. Martens*, 142 Idaho 284, 292, 127 P.3d 187, 195 (2005) (holding that an ophthalmologist could become familiar with the local standard of care for family practice physicians by practicing alongside family practice physicians in the relevant community).

Kishiyama is qualified to familiarize Moss with the standard of care for the relevant specialty at the time in question. Kishiyama is a board-certified psychiatrist with experience practicing in Idaho Falls in *both* inpatient and outpatient settings. He served as a senior designated examiner in Twin Falls County between 1997 and 2004. The law as it relates to involuntary commitments is the same in Twin Falls as it is in Idaho Falls. In addition, Kishiyama was a staff psychiatrist, dealing with inpatient admissions, for the very facility in this case. He worked for BHC between 2004 and 2008. He then continued—and remains—in private practice in the same community where the purported malpractice occurred. The district court seems to have concluded Kishiyama somehow failed to keep up with the applicable standard of care for voluntary and involuntary admissions in the relevant community between 2008 and 2015. The distinction between inpatient and outpatient practice is a distinction too fine. It is in direct contradiction of this Court's admonition that "the obligation to demonstrate actual knowledge of the local standard of care is not intended to be '*an overly burdensome requirement*[.]'" *Mattox*, 157 Idaho at 474, 337 P.3d at 633 (italics added) (quoting *Frank v. E. Shoshone Hosp.*, 114 Idaho 480, 482, 757 P.2d 1199, 1201 (1988)). Taken to its logical conclusion, EIRMC's argument must necessarily mean that the only person who could familiarize Moss would be Larsen or one of Larsen's colleagues. At some point "common sense"—which establishes that Kishiyama was a highly qualified and experienced psychiatrist—must be acknowledged. *See id.*

The district court abused its discretion in finding that Kishiyama did not have personal knowledge of the applicable standard of care for inpatient psychiatric patients at the time in question. Kishiyama's many years of experience speak directly to the situation presented by the Phillipses. He practiced as a staff psychiatrist at EIRMC's BHC, and continues to practice as a psychiatrist in Idaho Falls. He also had extensive experience in involuntary commitment procedures. For these reasons, the district court abused its discretion in finding that Kishiyama could not familiarize Moss with the relevant standard of care.

*b. The district court abused its discretion in determining that Erwin could not familiarize Moss with the local standard of care.*

The district court also found that Erwin could not familiarize Moss with the local standard of care because Erwin worked in an inpatient setting at Portneuf Medical Center in Pocatello, Idaho, and had begun that work in January 2016 (one month after the events giving rise to this case). The district court found a "geographic defect," stating that Pocatello was not part of the community at issue in this case, and further found a "temporal defect" in the one-month gap between December 2015 and January 2016. The district court abused its discretion in determining that Erwin could not familiarize Moss with the applicable standard of care. There was neither a geographic nor a temporal defect in Erwin's background.

In medical malpractice cases in Idaho, the geographical scope of the relevant community is a factual issue, defined by Idaho Code section 6-1012 as "that geographical area *ordinarily served* by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." I.C. § 6-1012 (italics added); *see also Bybee*, 157 Idaho at 175–77, 335 P.3d at 20–22. The "community" is not defined by physical distance from the health care provider, but rather by the locations from which its patient base is derived. *Bybee*, 157 Idaho at 176, 335 P.3d at 21. Idaho Code section 6-1012 also acknowledges that for some specialties, there will be no "like provider" able to establish the applicable standard of care, and that in those cases, evidence of similar Idaho communities is permitted. I.C. § 6-1012. We have also recognized, both implicitly and explicitly, that communities may "overlap."[4] *Bybee*, 157 Idaho at 176, 335 P.3d at 21; *see also Ballard v. Kerr*, 160 Idaho 674, 688, 378 P.3d 464, 478 (2016); *Ramos v. Dixon*, 144 Idaho 32, 35, 156 P.3d 533, 536 (2007).

Regardless of the theory used to establish the relevant community, an expert's statement defining this community must identify the basis of the expert's knowledge of the patient base, and should "attempt to identify, or even approximate, the frequency [with] which patients from [one locale] elect to receive services" at one provider as opposed to another. *Bybee*, 157 Idaho at 177, 335 P.3d at 22. "If users of the hospital's services commonly go from one location to the

---

[4] This is a separate concept from the Phillipses' assertion that the standard of care in Idaho Falls for psychiatrists practicing in an inpatient setting is "indeterminable." Because Moss was sufficiently familiarized with the local standard of care by the two familiarization experts, we need not reach the issue of indeterminability, other than to note that the district court apparently overlooked the Phillipses' alternate claim that the standard of care was "indeterminable."

place where the hospital is located, then that location falls within the geographical area which constitutes the community." *Id.* at 176, 335 P.3d at 21.

The district court abused its discretion in finding a "geographic defect" in Erwin's ability to familiarize Moss with the applicable standard of care. This was an abuse of discretion because the district court failed to act within the outer boundaries of its discretion. We have indicated that a court should look for "regular or common use" of a facility by a community's residents. *See Bybee*, 157 Idaho at 177, 335 P.3d at 22. The Phillipses established that residents of Pocatello commonly sought treatment at EIRMC in Idaho Falls. As part of discovery, EIRMC produced the zip codes of its patients from 2015 to early 2017. Moss identified the relevant zip codes for Pocatello in his October 5, 2017, expert opinion, identifying that EIRMC had served approximately 1,000 Pocatello residents in 2015 and approximately 1,100 in 2016. This is evidence indicating a degree of "regular or common" use of EIRMC by Pocatello residents.

The district court's mathematical calculation does not reveal an exercise of reasoning. The Phillipses provided evidence suggesting that Pocatello and Idaho Falls, if not constituting the same community, are communities which overlap. We recognized the possibility of overlapping communities in *Bybee*. *See* 157 Idaho at 176, 335 P.3d at 21. The district court erred in holding that the Phillipses had not shown "some degree of frequency" with which "users of the hospital's services commonly go from one location to the place where the hospital is located[.]" *Id.* The district court utilized 2010 population data from the U.S. Census Bureau, dividing the number of total Pocatello-area patients by the total population for Pocatello and, alternatively, Bannock County. The district court's calculations showed that 1.862% of the Pocatello population and 1.219% of the Bannock County population had been served by EIRMC in 2015, and that 2.107% of the Pocatello population and 1.38% of the Bannock County population had been served in 2016. The district court also relied on the Medical Defendants' total patient numbers from EIRMC to determine that approximately 1% of EIRMC's total patients in 2015 and 2016 were from the Pocatello area. What is lost in the district court's computation is that it ignores the fact that residents of Pocatello and Bannock County regularly access hospital care in Idaho Falls. The district court's analysis tends to engage in a hyper-technical mathematical analysis, when all that is required is "some degree of frequency" with which "users of the hospital's services commonly go from one location [Pocatello] to the place where the hospital is located [Idaho Falls]." *Id.* As such, the comparison utilized by the district

22

court is unhelpful, but was nevertheless relied on by the district court. As a result, the conclusion reached by the district court does not show an exercise of reasoning, as it ignores our holding in *Bybee*, 157 Idaho at 176–77, 335 P.3d at 21–22.

The district court also abused its discretion when it found that there was a temporal defect with respect to Erwin's familiarity with the relevant standard of care. Erwin began work in January 2016, at Pocatello's Portneuf Medical Center in its Behavioral Health Unit, less than one month after Scott's fateful visit to EIRMC. The district court reasoned that this one month gap constituted a "temporal defect" precluding her ability to familiarize Moss with the relevant standard of care. Implicit in the district court's conclusion is that the standard of care in Idaho Falls *changed* between December 2015, and January 2016.

The temporal requirement of Idaho Code section 6-1012 should not be drawn so stringently. In *Samples*, we found that an out-of-area doctor, hired to replace the defendant doctor *twenty-two months* after the allegedly negligent conduct, could serve as a local expert witness in that trial more than two years later.[5] *Samples*, 161 Idaho at 185, 384 P.3d at 949. We observed, "*it would certainly seem to be a matter of common sense that [the expert] would have had ample opportunity to become familiar with the previous standard of care[.]*" *Id.* (italics added).

Erwin began work at Portneuf Medical Center one month after Scott's visit to EIRMC. Erwin "would have had ample opportunity to become familiar with the previous standard of care," such that she could familiarize Moss with the standard. *See id.* The district court accordingly abused its discretion by failing to acknowledge the outer limits of a temporal gap when our case law suggests that a one-month gap in time is negligible. As a result, the district court abused its discretion in finding that Erwin could not familiarize Moss with the applicable standard of care for the relevant community.

> c. *Because Erwin and Kishiyama could familiarize Moss with the local standard of care, the district court abused its discretion in striking Moss's expert witness testimony.*

---

[5] We acknowledge *Samples* is not perfectly analogous. Unlike the case at bar, *Samples* "[did] not present a situation where an out-of-area doctor is required to become familiar with the local standard of care by consulting with a local physician." *Samples*, 161 Idaho at 185, 384 P.3d at 949. However, we noted in *Samples*, "Birkenhagan replaced Dr. Hanson as general surgeon at BMH a *mere* 22 months after the incident at issue." *Id.* (italics added). Based on *Samples*, a one-month gap in time is essentially *de minimis*.

An expert must testify as to "[t]he applicable standard of practice" and the "defendant's failure to meet said standard[,]" but before he may do so, Idaho Code section 6-1013 requires an adequate foundation to be laid.

> [E]stablishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is addressed[.]

I.C. § 6-1013. "In determining whether to admit affidavit testimony, the court must determine whether the affidavit alleges facts, which if taken as true, would render the testimony admissible." *Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 816, 332 P.3d 714, 728 (2014) (citation omitted).

Given the sufficiency of the local familiarization experts used, Moss met the foundational requirements of Idaho Code section 6-1013. In the expert opinion provided as part of the Phillipses' expert witness disclosures, Moss set forth the standard of health care practice for psychiatrists as calling for Scott's involuntary admission to the facility, and preventing Scott from discharging himself against medical advice. Moss stated he became familiar with this standard by speaking with Kishiyama and Erwin. Moss confirmed that his opinion as to the applicable standard of health care practice, and breach of that standard, was "actually held by [him] and [was] offered with reasonable medical certainty." Moss provided more than seven full pages of discussion relating to his opinions, the sources consulted, the applicable standard of care, the breach of that standard, and how that breach "created an unreasonably high risk of harm to [Scott] based on [Scott] posing an imminent danger to himself."

Idaho Code section 6-1013 is satisfied by the expert opinion Moss provided. Moss consulted two local physicians possessing expertise, one of whom had served as a senior designated examiner in Idaho for seven years. This Court has decided cases involving bare-bones expert witness affidavits that nonetheless passed foundational muster. *See, e.g., Bybee*, 157 Idaho at 178–79, 335 P.3d at 23–24; *Mains v. Cach*, 143 Idaho 221, 223–24, 141 P.3d 1090, 1092–93 (2006); *Dunlap ex rel Dunlap v. Garner,* 127 Idaho 599, 601, 903 P.2d 1296, 1298 (1994); *but see Kolln v. St. Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 331–32, 940 P.2d 1142, 1150–51 (1997) (observing that an affidavit that did not indicate how the expert became familiar with the standard of care, or his basis of claimed expertise, did not meet foundational requirements of Idaho Code sections 6-1012 and 6-1013); *Arregui*, 153 Idaho at 809–10, 291 P.3d at 1008–09

24

(observing lack of foundational requirements of affidavit when the expert never identified her local familiarization expert, the type of chiropractic practice the local expert operated, or the local expert's basis of familiarity with ailment or procedure at issue). Because Moss's affidavit exceeded a bare-bones affidavit and established the requisite foundational requirements, his expert witness opinion was admissible. Accordingly, the district court abused its discretion in striking the declarations of Moss dated October 5, 2017, and November 30, 2017. Further, because Moss was the Phillipses' only expert witness, the Phillipses' substantial rights were affected by the exclusion of Moss's testimony. *See Van*, 156 Idaho at 701, 330 P.3d at 1059. Accordingly, we reverse the district court's grant of EIRMC's motion to strike Moss's October and November 2017 declarations.

4. <u>The district court did not abuse its discretion in holding that the EIRMC "Standards of Care" in Scott's clinical documentation record did not establish the relevant standard of care because they did not affirmatively set out the standard of care or speak to the process at issue.</u>

The district court held that EIRMC "Standards of Care" that were part of Scott's clinical documentation records could not have familiarized Moss with the applicable standard of care. The Phillipses assert this was error, arguing that the "standards" identified support Moss's opinions as a whole.

Materials created by the healthcare provider can assist in establishing the applicable standard of care. *Mattox*, 157 Idaho at 479, 337 P.3d at 638 (expert witness could use care plan developed by defendant facility to assist in establishing applicable standard of care). However, this Court has required that the standard of care be "clearly articulate[d] . . . for the particular time, place and specialty at issue[.]" *Suhadolnik*, 151 Idaho at 118, 254 P.3d at 19. For example, in *Navo*, 160 Idaho at 363, 373 P.3d at 681, where an expert pointed to certain federal and statewide regulations as supplanting the local standard of care, this Court observed that these regulations did "not provide a coherent standard of care." *Id.* at 373, 373 P.3d at 691. Instead, this Court required "actual concrete guidance with respect to the *activities*" these regulations "purport to govern." *Id.* (italics added). "Generalities requiring 'compliance with the law,' 'effective leadership,' and that services be provided 'safely' and 'effectively'" were insufficient. *Id.* This is supported by this Court's requirement that a plaintiff in a malpractice case establish that a local familiarization consultant had familiarity with *the specific processes and procedures at issue*. *Arregui*, 153 Idaho at 809, 291 P.3d at 1008.

25

The district court did not abuse its discretion in finding that the "standards" set forth in Scott's clinical documentation record were insufficient to establish the relevant standard of care. The district court concluded in its decision on the Medical Defendants' motion to strike Moss's declarations that these "statements do not provide any basis to ascertain the 'standard of healthcare practice' required. Rather, they are more consistent with goals EIRMC and the others seek to attain in their treatment of patients." The district court also pointed out in its decision on the Phillipses' motion for reconsideration that "[n]othing about these statements . . . speaks to the issue of ascertaining whether a patient who is voluntarily committed to a mental hospital should be allowed to leave against medical advice, or be subjected to an involuntary hold instead." We have consistently emphasized that a standard of care be clearly articulated for the time, place, and specialty at issue. *Suhadolnik*, 151 Idaho at 118, 254 P.3d at 19; *Arregui*, 153 Idaho at 809, 291 P.3d at 1008. These statements do not affirmatively set out health care standards. Instead, like the regulations referenced in *Navo*, these statements are general and unspecific, using vague terminology like "care needs," "appropriate assessment," and "coordination of resources and establishment of priorities[.]" Accordingly, the district court did not abuse its discretion in holding that these standards could not serve as a basis for familiarizing Moss with the appropriate standard of care. Having said that, given that Moss is qualified to testify as an expert, his opinion can also rely on what EIRMC published to inform his opinion.

5.  The district court did not abuse its discretion by finding that Moss was unqualified to give expert testimony as to Scott's level of intoxication when he left EIRMC.

The district court concluded that the Phillipses failed to establish adequate foundation for Moss to provide expert testimony about whether Scott was intoxicated when he left EIRMC's Behavioral Health Center on December 8, 2015. The district court struck several declarations by Moss, one of which asserted that it was "medically certain that [Scott] would have had alcohol still in his system at the time of discharge[.]" The district court found that Moss was not qualified to testify about the rate of alcohol dissipation. The Phillipses argue that Moss's "thirty years of experience treating patients with addictive behaviors" qualified him to testify about the rates of alcohol dissipation. The Phillipses assert that Moss was familiar with the rates of alcohol dissipation "as a psychiatrist with extensive experience treating addictions." The Phillipses exclusively cite to Moss's November 30, 2017, declaration for these factual assertions. The Phillipses also cite *Weeks v. Eastern Idaho Health Services*, 143 Idaho 834, 837, 153 P.3d 1180,

26

1183 (2007), to support the proposition that Moss "does not need to be a toxicologist to testify as to [Scott's] intoxication if the records provide him with a basis for his opinion."

The Medical Defendants argue that treatment of addiction "is fundamentally different from toxicological knowledge and knowledge of alcohol dissipation rates[.]" The Medical Defendants emphasize the untimely filing of Moss's November 30, 2017, declaration—providing new subject matter and underlying facts and data after the October 5 deadline for expert witness disclosures. The Medical Defendants also assert that *Weeks* is not applicable because in *Weeks*, the district court had erred by concluding that an expert witness was not qualified based on an *admissibility of evidence* analysis, rather than a *qualification* analysis demanded by I.R.E. 702. (citing *Weeks*, 143 Idaho at 837–38, 153 P.3d at 1183–84). Here, the Medical Defendants argue, the district court properly considered I.R.E. 702 in its analysis.

The district court did not abuse its discretion when it held that Moss was not qualified to opine about Scott's level of intoxication. Expert opinion and lay opinion testimony is governed by Idaho Rules of Evidence 701, 702, and 703.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

I.R.E. 702. This Court has emphasized that while "[t]he test for determining whether a witness is qualified as an expert is 'not rigid[,]' . . . . [p]ractical experience or special knowledge must be shown to bring a witness within the category of an expert." *Weeks*, 143 Idaho at 837, 153 P.3d at 1183 (citing *West v. Sonke*, 132 Idaho 133, 138–39, 968 P.2d 228, 233–34 (1998); *Warren v. Sharp*, 139 Idaho 599, 605, 83 P.3d 773, 779 (2003)). This Court has indicated that testimony about the effects of alcohol on a particular person must come from someone whose "field of expertise . . . encompass[es] the medical or physiological areas which would qualify" an individual to so testify. *Dabestani v. Bellus*, 131 Idaho 542, 546, 961 P.2d 633, 637 (1998).

Although Moss's testimony as to Scott's intoxication levels was included in his expert witness opinion, and timely filed on October 5, 2017, the extent of foundation asserted by the Phillipses for such testimony was Moss's experience with addiction treatment. Addiction treatment is not the same field of expertise that would qualify Moss to testify "concerning the effects of alcohol on a particular person[,]" given the technical nature of alcohol dissipation rates and the relevant variables therein. *Dabestani*, 131 Idaho at 546, 961 P.2d at 637. Accordingly,

27

the district court did not abuse its discretion in finding that Moss was not qualified to testify about alcohol dissipation rates.

**D. The district court erred in granting the Medical Defendants' motions for summary judgment.**

The district court struck the testimony of Moss, the Phillipses' expert witness, on January 24, 2018, and contemporaneously granted the Medical Defendants' motions for summary judgment. The district court subsequently denied the Phillipses' combined motions for reconsideration and to vacate, amend, or alter the judgment. In doing so, the district court reached additional issues raised by the Medical Defendants "in an abundance of caution[,]" namely (1) whether the "Leaving Hospital Against Medical Advice" ("AMA") form Scott purportedly signed on December 8, 2015, served to bind the Phillipses and release the Medical Defendants of liability, (2) whether there was sufficient evidence in the record to raise a genuine issue of material fact as to the authenticity of Scott's signature, and (3) whether Scott was competent to sign the AMA form at the time of his alleged signature.

The Phillipses argue that Moss's testimony should not have been stricken. The Phillipses question whether the AMA form purportedly signed by Scott was effective to shield EIRMC, BHC, and Larsen from liability. The Phillipses further argue that issues of material fact remain as to whether Scott was competent to sign the AMA form, if he signed it at all.

The Medical Defendants argue that the district court did not abuse its discretion in striking Moss's testimony. The Medical Defendants further argue that the AMA form released EIRMC, BHC, and Larsen from liability resulting from Scott's self-discharge. The Medical Defendants assert that the AMA form would have barred recovery by Scott, had he not died, and would thus bar recovery by the Phillipses.

For the following reasons, we reverse the district court's grant of summary judgment against the Phillipses. Because we hold that Moss's expert opinions should not have been stricken, a genuine issue of material fact remains and the Medical Defendants were not entitled to judgment as a matter of law. Further, for the same reason, a genuine issue of material fact remains as to Scott's competency to sign the AMA form proffered by the Medical Defendants. The district court erred when it failed to address the disputed issue of Scott's competency. Because we reverse the grant of summary judgment on other grounds, we need not reach the issue of the disputed authenticity of the AMA form.

1. The district court erred in granting the Medical Defendants' motions for summary judgment because the Phillipses established adequate foundation for Moss's expert opinion.

To survive a motion for summary judgment, malpractice plaintiffs must offer expert testimony "indicating that the defendant health care provider negligently failed to meet the applicable standard of health care practice." *Bybee*, 157 Idaho at 174, 335 P.3d at 19 (quoting *Dulaney*, 137 Idaho at 164, 45 P.3d at 820). At the summary judgment stage, this Court "has been reluctant to grant a defendant's motion for summary judgment when the plaintiff's expert did consult a local physician possessing expertise on the area at issue." *See Grover v. Smith*, 137 Idaho 247, 250–51, 46 P.3d 1105, 1108–09 (2002) (collecting cases). The district court abused its discretion when it struck Moss's expert testimony, and accordingly the Medical Defendants were not entitled to judgment because Moss's testimony created a genuine issue of fact.

2. A genuine issue of material fact remains with respect to the validity of the AMA form because Moss has challenged Scott's mental competence to sign the form.

The district court found that there was no genuine issue of material fact as to the authenticity of Scott's signature on the AMA form, and as to Scott's competence to sign the form. The district court held that, even giving the Phillipses the benefit of all reasonable inferences under the summary judgment standard, the Phillipses had not presented evidence to indicate there was a genuine dispute of material fact. We disagree.

"Whether a contracting party has sufficient mental capacity to enter into a valid contract is a question of fact to be determined by the trier of the facts *as of the time of the transaction*." *Olsen v. Hawkins*, 90 Idaho 28, 35–36, 408 P.2d 462, 466 (1965) (italics in original) (citation omitted). "The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the act or transaction in which he is engaged[.]" *Id.* at 33, 408 P.2d at 464 (citation omitted).

At a minimum, the Phillipses have pointed to Scott's history of mental illness and corresponding competence as presenting issues of material fact as to whether Scott was competent to sign the AMA form. The district court correctly held that Moss was not qualified as an expert witness to speak to Scott's intoxication levels. However, the district court did not address Scott's competency based on his mental status, although this issue had been raised in briefing below.

29

The agreed-upon facts are that Scott was taken to EIRMC because he was intoxicated (with a breath test showing a breath alcohol content of .22). Scott had been driving a vehicle, was suicidal, and had the means (a loaded pistol with the safety off) with which to readily accomplish his suicide. Deputy Nebeker, the Bingham County Deputy Sheriff who stopped Scott, was so concerned for Scott's well-being that he transported Scott to EIRMC, which is in a different county. Scott was then transported from EIRMC to BHC by Eric Rose, an off-duty Idaho Falls Police Department officer working as a security officer for EIRMC. Rose was told to call Deputy Nebeker should Rose encounter any problem with Scott. Nevertheless, within hours, Scott was released from BHC against medical advice, and shortly thereafter he committed suicide, which is the reason he was taken to EIRMC in the first place.

The district court may have failed to address Scott's competence because the district court had stricken Moss's expert testimony. However, Moss was qualified to speak to Scott's capacity to understand the extent, character, and effect of the AMA form he purportedly signed. Accordingly, it was error for the district court to conclude that there was no genuine issue of material fact as to Scott's competency to execute the AMA form.[6]

For the reasons above, we hold that the district court erred by granting summary judgment to the Medical Defendants. Accordingly, it is unnecessary to reach the additional issues raised by the Phillipses and the Medical Defendants about the AMA form's sufficiency to release the Phillipses' claims for wrongful death. This Court has not addressed whether a properly executed AMA form, if valid in its scope, serves to shield a defendant from liability against a wrongful death suit, much less where an ordinary AMA form is executed by a voluntary inpatient when leaving a mental health facility. Deciding this issue would be premature given the conflicting facts and procedural posture of this case, so we decline to reach it.

### E. The district court did not abuse its discretion in granting the Phillipses' motion to amend the scheduling order.

The district court's original scheduling order did not provide for the disclosure of rebuttal expert opinions. After the Medical Defendants filed their expert witness disclosures on November 20, 2017, the Phillipses filed a motion to amend the scheduling order to allow them to

---

[6] The argument of the Medical Defendants is incongruous to these facts. Scott was brought to BHC because he was suicidal. He then sought his release, and only upon signing a release which indicates he was being released "Against Medical Advice" was he allowed to be released. The crux of the Phillipses' case is that Scott should not have been released. However, the Medical Defendants claim absolution because Scott, who was suicidal and of questionable mental capacity, signed a release which seems to explicitly acknowledge his frail mental health. At a minimum, this question presents a genuine issue of material fact which needs to be decided by a fact-finder.

disclose a rebuttal expert witness and additional opinions. The Medical Defendants and the Bingham County Defendants objected. At the motion hearing, the district court heard arguments from both sides, and then granted the motion to amend the scheduling order, in effect allowing a rebuttal witness.

The Medical Defendants argue that Idaho Rule of Civil Procedure 16(a)(3) allows deadlines for expert witness disclosure to be modified only "by leave of the court on a showing of good cause[,]" and contend that "good cause" requires "sworn testimony by affidavit or otherwise setting forth facts that demonstrate good cause." The Medical Defendants contend this provision requires a sworn affidavit before a scheduling order may be amended. The Phillipses counter that Rule 16 does not require sworn testimony to establish good cause. The Phillipses argue that such a rule would be "hypertechnical" and would remove a trial court's discretion in determining whether good cause has been shown.

Scheduling orders may not be modified "except by leave of the court on a showing of good cause." I.R.C.P. 16(a)(3). "This Court has consistently held that trial courts' decisions involving application of a 'good cause' standard are discretionary decisions." *Mercy Med. Ctr. v. Ada Cty. Bd. of Cty. Comm'rs*, 146 Idaho 226, 230, 192 P.3d 1050, 1054 (2008) (citation omitted). "[A]lleged errors not affecting substantial rights will be disregarded." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 310, 233 P.3d 1221, 1232 (2010) (citing *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 426, 95 P.3d 34, 44 (2004)).

"Good cause" in the context of amending a scheduling order under Rule 16 does not require sworn testimony by affidavit. Although this Court has required affidavits for "good cause" in the context of other rules such as I.R.C.P. 4(a)(2) or I.R.C.P. 40(c), we have also observed that "[g]ood cause" in the context of one rule is "wholly irrelevant" to another. *Morgan v. Demos*, 156 Idaho 182, 187, 321 P.3d 732, 737 (2014) (citing *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 132 Idaho 531, 535, 976 P.2d 457, 461 (1999)); *see also Taylor v. Chamberlain*, 154 Idaho 695, 698, 302 P.3d 35, 38 (2013). Further, we have commented on

> the practice of issuing discovery orders that fail to allow plaintiffs to add witnesses in response to defendants' witness disclosures. *The purpose of our discovery rules is to facilitate fair and expedient pretrial fact gathering.* It follows, therefore, that discovery rules are not intended to encourage or reward those whose conduct is inconsistent with that purpose . . . . We are of course mindful that the Rules of Civil Procedure equip both sides with tools to ensure fair pretrial procedure[,] and we have little sympathy for attorneys who do not

31

utilize these tools to the extent reasonable. But *we do not look favorably upon discretionary decisions by district judges that encourage last-minute witness disclosure and unreasonably prevent plaintiffs from responding, particularly in complex medical malpractice cases* where experts will be furnishing the jury with the bulk of the necessary, and often technical, facts.

*Edmunds v. Kraner*, 142 Idaho 867, 873, 136 P.3d 338, 344 (2006) (italics added) (internal citations omitted).

Accordingly, the district court did not abuse its discretion. At the motion hearing, the district court acknowledged that it was acting within its discretion. The district court heard argument from the Phillipses stating that the rebuttal expert opinions were in response to new issues raised by the Medical Defendants' expert witnesses in their disclosures. This argument also included assertions that there were no new experts being proffered.[7] The district court stated that it had reviewed the pleadings and cases that had been submitted, and had considered the timing of the disclosures. Given all of these considerations, the district court granted the motion to amend the scheduling order; accordingly, this was not an abuse of discretion.

**F. Neither party is entitled to attorney fees, but the Phillipses are entitled to costs as the prevailing parties.**

The Phillipses did not request attorney fees in their opening brief. Consequently, they are not entitled to attorney fees on the issues brought by them in their direct appeal. I.A.R. 41(a).

In their cross-appeal, the Medical Defendants seek a portion of their attorney fees and costs on appeal pursuant to Idaho Code section 12-121 and I.A.R. 40 and 41. The Medical Defendants argue that, "[w]hile the majority of the arguments raised on appeal present novel issues of first impression, the Plaintiffs' continued reliance on Penny Phillips's wholly unsupported speculations about the authenticity of Mr. Phillips's signature on the AMA form was again frivolously, unreasonably, and without foundation raised on appeal." The Medical Defendants accordingly request a prorated award of attorney fees on appeal attributable to this issue. In response, the Phillipses argue that the Medical Defendants' argument on cross-appeal is "unfounded under Idaho law" and does not present a question of first impression, and have requested attorney fees on cross-appeal.

Idaho Code section 12-121 states that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case

---

[7] The rebuttal expert witness disclosures were not included in the record. "[W]hen a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court." *Hansen v. White*, 163 Idaho 851, 853, 420 P.3d 996, 998 (2018).

was brought, pursued or defended frivolously, unreasonably or without foundation." In addition, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).

The Medical Defendants' assertion that the Phillipses appealed the issue of the authenticity of Scott's signature without foundation is incorrect. Penny Phillips *did not* question the authenticity of Scott's purported signature *without any support whatsoever*. This issue, and the confusion surrounding it, was created by the Medical Defendants. Had the document been provided at the outset of discovery, its authenticity probably would not be an issue at this stage of the proceedings. The Phillipses' argument with regard to the late disclosure of the document is not frivolous, unreasonable, or without foundation. Accordingly, the Medical Defendants' request for attorney fees will be denied.

The Phillipses claim entitlement to attorney fees for their having to defend against the cross-appeal brought by the Medical Defendants. They contend that the Medical Defendants are merely asking this Court to second-guess the trial court's decision to allow the scheduling order to be amended and that by doing so their cross-appeal is frivolous, unreasonable, or without foundation. However, the Medical Defendants' cross-appeal is not frivolous, unreasonable, or without foundation. The Medical Defendants had a legitimate basis for bringing their cross-appeal. Consequently, imposition of attorney fees against the Medical Defendants is unwarranted.

Because the Phillipses are the prevailing parties on appeal, they are entitled to their costs. I.A.R. 40.

## IV.   CONCLUSION

The district court abused its discretion in striking Moss's expert witness testimony. Accordingly, we reverse the district court's grant of the Medical Defendants' motion to strike Moss's declarations dated October 5, 2017, and November 30, 2017. Because we conclude the district court erred in striking Moss's testimony, we accordingly also reverse the district court's grant of summary judgment in favor of the Medical Defendants, and remand for further proceedings. We affirm the district court's grant of the motion to amend the scheduling order to allow a rebuttal expert witness. We also reverse the district court's grant of the protective order requested by EIRMC with respect to the scope of its corporate designee's deposition. Although we found error in the district court's authorization of the depositions of the two psychiatrists

retained to familiarize Moss with the local standard of care, the issue is moot and does not constitute reversible error. We deny the parties' requests for attorney fees, and grant costs to the Phillipses as the prevailing parties.

The case is remanded to the district court for further proceedings consistent with this decision.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.